No. 44,526

CITIES SERVICE GAS COMPANY, a Corporation, Plaintiff, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, RICHARD C. BYRD, Chairman, ALVIN F. GRAUERHOLZ and HARRY G. WILES, as members of said Commission, and their respective successors in office, Defendants, *Appellees*, and THE WOODSON PIPE LINE AND PRODUCING COMPANY, a Corporation, Intervenor, *Appellee*.

(416 P. 2d 736)

Opinion filed July 14, 1966.

*George E. Peabody*, of Oklahoma City, Oklahoma, and *Mark H. Adams, II*, of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Clifford L. Malone, John S. Seeber, Floyd E.*

*Jensen, Philip L. Bowman,* and *Robert Hall,* all of Wichita, and *Charles V. Wheeler,* of Oklahoma City, Oklahoma, and *Roy L. Cole,* of Garnett, were with them on the brief for the appellant.

*Carl L. Wettig,* of Wichita, argued the cause, and *E. Edward Johnson,* general counsel for the state corporation commission, and *Charles C. McCarter, Kent Frizzell,* and *James R. Schmitt,* all of Wichita, were with him on the brief for the appellee commission.

*Stanley E. Toland,* of Iola, argued the cause, and *Frank W. Thompson,* of Iola, was with him on the brief for the appellee, The Woodson Pipe Line and Producing Company.

The opinion of the court was delivered by

HARMAN, C.: Appellant Cities Service Gas Company brings for review here a judgment rendered by the district court of Anderson County, Kansas, on appellant's petition for judicial review of orders of the state corporation commission pursuant to K. S. A. 55-606. Such orders grant to the Woodson Pipe Line and Producing Company permission to waterflood an oil and gas lease in Anderson County under the provisions of K. S. A. 55-133; 55-134; and 55-135 and pertinent rules and regulations of the commission.

The background of the controversy may be stated thus: The Woodson Pipe Line and Producing Company, hereinafter called Woodson, owns the right to produce oil from a formation called the Squirrel sand underlying certain land covered by what is known as the Buchanan lease. In 1936 Cities Service Gas Company, hereinafter called Cities, purchased from Woodson certain mineral rights to the Colony sand formation which is situated below the Squirrel sand under the Buchanan lease and other lands in the same vicinity. The two sand formations are physically separated from each other by a shale barrier. Cities has utilized the Colony sand as an underground storage reservoir for gas as a part of its integrated interstate gas pipe line system for the transportation of gas in interstate commerce. In 1936 at the time Cities acquired their initial gas storage rights from Woodson the two companies entered into an operating agreement concerning the operation of their respective interests and subsequent supplemental agreements have been made.

In 1960 Woodson filed its application with the commission for a permit to waterflood the Squirrel sand as a method of secondary oil recovery therefrom. Cities was notified by the commission of the application and it filed its objections thereto along with its petition to intervene in the proceedings. The petition to intervene was sus-

tained. The objections were based primarily on Cities' contention that Woodson's proposed repressuring operations would cause a break or fracture in the shale formation separating Cities' storage reservoir from the area of Woodson's oil operations and thus permit an escape of their storage gas. Woodson filed its response to the objections and extensive hearings were had by the commission on the issues thus joined and eventually the commission made its formal order granting the waterflood permit with certain restrictions. The commission retained jurisdiction of the subject matter for the purpose of entering any further orders deemed necessary. At the same time the commission attached to its formal order, incorporating it therein by specific reference, what is designated as a memorandum opinion of the commission. Thereupon Cities sought a judicial review by the district court of Anderson County, Kansas, of the entire order, which attempted review action, for purported procedural defects, was dismissed by that court thereby becoming the subject of an appeal to this court. Suffice it to say for our purposes here, this court reversed the order of dismissal of the review action (*Cities Service Gas Co. v. State Corporation Commission,* 192 Kan. 707, 391 P. 2d 74). That review on the merits has now been had.

The district court, with certain refinements to be hereinafter more specifically mentioned, approved the commission's order granting Woodson the waterflood permit and it also approved the memorandum opinion as a part of said order, and it is from this district court order of approval that this appeal is taken. Appellant Cities emphasizes it does not now contest the formal order granting the waterflood permit but it does challenge the commission's authority or jurisdiction to consider and adjudicate certain purported issues raised in the proceedings before it as set forth in the memorandum opinion.

At the hearing before the commission evidence pro and con was produced as to the thickness of the shale barrier separating the two formations, the nature and structure of the barrier, its permeability, the likelihood of fracturing from the proposed waterflooding, and the possible direction—vertically or horizontally—of any such fracturing. Evidence was also introduced as to the history of the entire oil and gas operation on the lease, the presence at various times of non-native or storage gas in the Squirrel sand which had necessarily come from the Colony sand, possible avenues of communication between the two sand strata and possible reasons or explanations therefor. This all becomes meaningful when it is

realized that the two formations were, in the language of the commission, "initially separate common sources of supply and not in communication with each other" and that one possible explanation for the escape of the storage gas from the Colony to the Squirrel formation could be the prior operations of Woodson.

In its comprehensive memorandum opinion, which is really the target of this appeal, the commission first stated:

"6. The protestant herein, Cities Service, has actively opposed this application and during the seven days required to hear this matter it raised numerous issues which will be discussed below."

We do not deem it necessary to set forth the lengthy memorandum but in it the commission then discussed the foregoing matters concerning which evidence was produced, and commented thereon. Simply stated, the commission heard Cities' objections and decided they were insufficient to deny Woodson the waterflood permit.

At the review hearing Cities sought diligently to have the memorandum part of the order deleted. The district court considered this request at three hearings and finally declined to do so, but it did attempt to clarify the matter, its final conclusions of law thereon being as follows:

"CONCLUSIONS OF LAW

· · · · · · · · · · · · · ·

"3. In affirming the order and decision of the Commission this court need not incorporate as its own findings of fact those specific findings made by the Commission in its order. What facts were to be considered and the relative weight to be accorded them are matters properly left to the Commission's discretion. The question here is the power or authority of the Commission to make the order, not its wisdom, propriety or expediency in having made it.

"4. The district court's responsibility is to determine whether the findings, order and decision of the Commission are lawful, reasonable and supported by substantial competent evidence. In so doing it considers the evidence solely for the purpose of determining whether such order is reasonable and lawful and only when the order of the Commission is found to be unlawful or unreasonable is the court authorized to vacate or set aside, in whole or in part, said order.

"5. The Commission, upon granting Cities' application to intervene as an interested party, properly considered the issues raised by Cities' objection to Woodson's Application. Upon determining that the objections raised by Cities to the application of Woodson for permission to inject water under pressure for the purpose of recovering oil under the Buchanan lease were not valid reasons for denying the same, the objections were properly dismissed. *The findings, conclusions and order of the Commission were not determinations of property and/or contract rights or liabilities as between Cities Service and Woodson, except as these may be delineated or affected by the waterflood permit and the Commission's continuing authority thereunder.*

"6. The Memorandum Opinion and Order of the Commission . . . constituting written approval to Woodson to inject water under pressure for the purpose of recovering the oil continued in the Buchanan lease (K. S. A. 55-133) . . . are lawful, reasonable, supported by substantial competent evidence and should be affirmed and approved." (Our emphasis.)

Cities says it is uncertain as to just what is meant by the exception contained in the court's conclusion of law No. 5. Cities makes clear its concern arises from the fear that some adverse finding of the commission might arise as *res judicata* in some future litigation involving the same parties and subject matter. It does not specifically pinpoint any precise objectionable findings and the reference is somewhat nebulous as to just what clouds are claimed to be cast upon Cities' rights. Cities states quite frankly it is concerned with protecting itself in the future. Cities and Woodson do have existing contractual rights and obligations and, of course, other causes of action conceivably could exist or arise between them as a result of their operations in such close proximity.

Appellees contend that Cities having voluntarily intervened in the proceeding and raised certain objections, cannot, after adverse rulings thereon, assert lack of jurisdiction to rule on such objections. As appealing as appellees' contention is, we think we should examine the jurisdictional aspect.

This court cannot in any event determine now what would be *res judicata* in the future as to some undisclosed controversy. The doctrine of *res judicata* has no place in this proceeding and no comfort can be afforded appellant in that area as requested.

The state corporation commission is an administrative agency of limited jurisdiction, its jurisdiction being that conferred by statute (*Renner v. Monsanto Chemical Co.,* 187 Kan. 158, 354 P. 2d 326).

That jurisdiction as applicable here is the granting or denying, in the interest of oil and gas conservation, of authority to waterflood oil and gas wells (K. S. A. 55-133). The power is regulatory in nature, representative of the public interest, and it is not intended to settle private controversy apart from the public interest. The corporation commission provides no forum for the litigation of purely private rights and liabilities (73 C. J. S., Public Utilities, § 39, p. 1071).

That the commission acted in accord with these principles seems clear from the entire record. The commission in nowise attempted to assert jurisdiction over Cities' property or any choses in action or to make any order affecting the same. The commission did discuss at length, in the light of its expertise, the reasons for its findings.

It cannot be condemned for this practice inasmuch as its final order is subject to the test of reasonableness in a reviewing court, and as heretofore indicated no contention is now made as to the reasonableness of the final order. We think the matter objected to went no further than discussion of the factors germane to the question of allowing or denying the application and the reasoning leading to the final conclusion. This assessment seems solidly buttressed by the commission's own conclusion in its memorandum as follows:

"CONCLUSION

"29. The questions for consideration and determination in the proceeding before the Commission are necessarily determined by the jurisdiction of the Commission. Within its statutory limits this Commission has broad powers in conservation matters for the prevention of waste and protection of correlative rights. But its jurisdiction is created and limited by statute to that phase of regulation of oil and gas matters. Upon this basis, we are of the opinion that the questions which are properly before us and which should be decided by us are the following:

"A. Does the Commission have jurisdiction of the subject matter and the parties hereto and is applicant the owner and operator of the acreage for which a waterflood permit has been requested?

"B. Has applicant complied with the applicable statutes and Commission rules and regulations relative thereto?

"C. Will the proposed waterflood project result in the violation of correlative rights of owners in this common source of supply, and does the proposal conform to good conservation practices?

"D. Will the proposed waterflood project cause waste?"

The trial court manifestly, and we think correctly, took the same view as set forth in its conclusions of law and particularly the last sentence of paragraph 5 thereof. The matter need not be spelled out further.

Cities has raised other objections to the operative effect of the memorandum order based on constitutional grounds but these contentions are premised on matters encompassed in that which has already been said herein and require no further discussion.

Cities makes one further contention, that the statutes authorizing the commission to issue waterflood permits (K. S. A. 55-133; 55-134; 55-135) are unconstitutional in that they do not provide any standards of conduct to govern the exercise of the commission's authority to approve or deny such applications and to promulgate rules and regulations to carry out the provisions thereof. This issue has been presented many times and decisions thereon clearly show that any reasonable standard is sufficient to withstand an attack on such constitutional grounds. Standards of "public necessity" (*Schaake*

*v. Dolley,* 85 Kan. 598, 118 Pac. 80), "just and reasonable" (*Tagg Bros. v. United States,* 280 U. S. 420, 74 L. ed. 524, 50 S. Ct. 220), "public interest" (*N. Y. Central Securities Co. v. U. S.,* 287 U. S. 12, 77 L. ed. 138, 53 S. Ct. 45), "public convenience, interest or necessity" (*Nat. Broadcasting Co. v. U. S.,* 319 U. S. 190, 87 L. ed. 1344, 63 S. Ct. 997), "to the interest of their respective townships" (*State v. Sherow,* 87 Kan. 235, 123 Pac. 866) have been held adequate. See, also, *Consumers Sand Co. v. Executive Council,* 126 Kan. 233, 268 Pac. 123; and *State, ex rel., v. Board of Education,* 173 Kan. 780, 252 P. 2d 859. In K. S. A. 55-133 it is recited that the owner or operator of any well which produces oil or gas shall be permitted "in the interest of oil and gas conservation," to introduce and inject air, gas, water, or other fluid under pressure into such wells if the corporation commission approves and finds such injection to be in the best interest of oil and gas conservation. And K. S. A. 55-134 grants the commission power to prescribe rules and regulations necessary to carry out the foregoing. Such rules have been promulgated. We think the standard expressed is clearly adequate and that the legislature has validly delegated authority to grant or deny waterflood permits. In our recent case of *Colorado Interstate Gas Co. v. State Corporation Comm.,* 192 Kan. 29, 386 P. 2d 288, this court upheld a similar grant of administrative power to the corporation commission, finding the delegation of authority in question not to be an unlawful one. This court at page 37 quoted with approval from its prior decisions as follows:

" 'While the legislature cannot delegate its constitutional power to make a law (Article 2, Section 1, Kansas Constitution), it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative.' " (*Water District No. 1 v. Robb,* 182 Kan. 2, Syl. 6, 318 P. 2d 387.)

. . . . . . . . . . . . . . .

" 'The act does not delegate to the board of railroad commissioners legislative powers. The legislature in the exercise of its power to regulate and control public corporations, such as common carriers, may delegate to a board of railroad commissioners certain functions administrative in character which cannot well be performed by the legislature itself.' " (*State v. Railway,* 76 Kan. 467, Syl. 2, 92 Pac. 606, affirmed *Mo. Pac. Ry. Co. v. Kansas,* 216 U. S. 262, 54 L. ed. 472, 30 S. Ct. 330.)

The commission's order herein appears to be lawful and reasonable, there is no constitutional infirmity, and the district court's review order of approval must be and is affirmed.

APPROVED BY THE COURT.