No. 45,897

CENTRAL KANSAS POWER COMPANY, THE KANSAS POWER AND LIGHT COMPANY, CENTRAL TELEPHONE AND UTILITIES CORPORATION, EMPIRE DISTRICT ELECTRIC COMPANY and KANSAS GAS AND ELECTRIC COMPANY, *Appellants*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS (DALE E. SAFFELS, Chairman, JULES V. DOTY and JAMES O. GREENLEAF, as members of said commission and their respective successors in office) and SUNFLOWER ELECTRIC COOPERATIVE, INC., *Appellees.*

(482 P. 2d 1)

Opinion filed March 6, 1971.

*James C. Mordy,* of the firm of Morrison, Hecker, Cozad, Morrison and Curtis, of Kansas City, Missouri, argued the cause, and *Thomas E. Gleason,* of the firm of Gleason, Pinet and Jordon, of Ottawa, was with him on the brief for the appellant Central Kansas Power Company.

*Richard C. Byrd,* of the firm of Anderson, Byrd, Richeson and Jones, of Ottawa, was on the brief for appellants Central Telephone and Utilities Corporation, The Kansas Power and Light Company, and Empire District Electric Company.

*Ralph Foster,* of Wichita, was on the brief for appellant Kansas Gas and Electric Company.

*Jack Glaves,* General Counsel, argued the cause, and *David Berkowitz,* Assistant General Counsel, was with him on the brief for appellee State Corporation Commission.

*Boyce P. Hardman,* of the firm of Diets and Hardman, of Great Bend, argued the cause and was on the brief for appellee Sunflower Electric Cooperative, Inc.

The opinion of the court was delivered by

FROMME, J.: This is an appeal by five electric public utilities seeking to overturn a judgment of the district court sustaining an order of the State Corporation Commission (the commission)

granting an enlargement of the certificate of authority held by Sunflower Electric Cooperative, Inc. (Sunflower).

In 1958 Sunflower was granted a limited certificate of convenience and authority to transact the business of an electric public utility for the generation and sale of electric energy at wholesale for resale to four consumer cooperatives located in northwest Kansas. These consumer cooperatives are Great Plains Electric Cooperative, Inc., at Colby, Kansas, The Northwest Kansas Electric Cooperative, Inc., at Bird City, Kansas, Norton-Decatur Cooperative Electric Company, Inc., at Norton, Kansas and The Western Cooperative Electric Association, Inc., at WaKeeney, Kansas. They will be referred to as the northern cooperatives. Sunflower was organized by and for the benefit of these four northern consumer cooperatives which it serves with an electric power generating plant at Hill City, Kansas. Construction of the Hill City plant was financed with funds obtained through the Rural Electrification Administration. The plant is operated and maintained under a contract with the Central Kansas Power Company, one of the appellants herein. The contract provides for delivery of the power generated over the Central Kansas Power Company transmission system to delivery points serving the four northern cooperatives.

By 1968, when Sunflower filed the present application for an enlargement of its certificate, Sunflower had extended its sphere of influence to four additional electric consumer cooperatives located in southwest Kansas. These participating members of Sunflower are Wheatland Electric Cooperative, Inc. (Wheatland), located at Scott City, Kansas; Lane-Scott Electric Cooperative, Inc., located at Dighton, Kansas; Victory Electric Cooperative Ass'n, Inc., located at Dodge City, Kansas and Pioneer Cooperative Association, Inc., located at Ulysses, Kansas. Some of these consumer cooperatives are generating and transmitting electrical power to their members from small power plants owned by them or operated on contract, over transmission systems serving their consumer members.

If the enlarged certificate of convenience and authority is approved Sunflower will take advantage of a $14,000,000 loan available through the Rural Electrification Administration to finance construction of a 94 megawatt electric power plant and related facilities near Garden City, Kansas. The plant will supply wholesale electric power to the four southern cooperatives and to the northern cooperative located at WaKeeney, Kansas. Wheatland, one of Sun-

·flower's southern member cooperatives, has been generating most of its electric power. It has been operating an additional municipal plant for Garden City, Kansas, under a contract. Wheatland is scheduled to assist in the construction and, when the plant is completed, it will operate the 94 megawatt electric power generating plant to be owned by Sunflower at Garden City.

The demand for electric energy upon the eight consumer cooperatives has exceeded their generating capabilities and their present contracted power supplies. The four northern cooperatives have purchased this excess electric power from the Central Kansas Power Company of Hays, Kansas. The southern cooperatives have purchased their excess electric power through Wheatland from the Central Telephone and Utilities Corporation of Great Bend, Kansas.

Central Kansas Power Company and Central Telephone and Utilities Corporation are investor owned utility companies holding overlapping certificates of authority with several of the consumer cooperatives in this area. These two investor owned utility companies purchase their excess electric power from other investor owned utility companies operating further east in Kansas, such as The Kansas Power and Light Company, Empire District Electric Company and Kansas Gas and Electric Company. Together these five investor owned utility companies opposed the application of Sunflower before the commission and carried the commission's order to the district court for review. They are the appellants herein.

The record, compiled at the hearing before the commission and now before us for review, consists of three volumes containing over 900 pages of exhibits and testimony. The record discloses a power struggle between the electric cooperatives and the investor owned electric utilities spanning a ten year period. Neither the commission nor the courts are concerned in this case with settlement of private controversy apart from the public interest in dependable electric power. The above summary of background material is only a thin backdrop against which the questions raised on appeal can be discussed.

The appellants contend the order of the commission fails to contain essential findings necessary to support the action of the commission. (See *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572 and *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P. 2d 660.) In addition appellants contend that the evidence is wholly

insufficient to support the necessary findings, therefore the order is unreasonable and should be set aside.

The order of the commission covers fourteen pages of the record. It is not necessary to set out the entire order. The order follows the form prescribed by the commission in its rules of practice and procedure and contains a summary of the allegations and contentions of the applicant, a summary of the evidence of the applicant, a summary of the evidence of a staff engineer of the commission, a summary of the evidence of the intervenors (appellants herein) together with findings of fact, conclusions of law and the order granting the application.

The findings of fact contain much of the background material previously related in this opinion and describe in detail the electric generating plant and the two electric transmission lines authorized. Copies of twenty-two contracts between the various cooperatives or between the cooperatives and their fuel and excess power suppliers, were attached to the application and are approved for filing by the order of the commission.

Findings 5, 6 and 7, over which much of the controversy centers, read as follows:

"5. There has been a constant growth pattern for demand of electric energy in the area served by Applicant's participating members and there is need for an additional source of power to serve the area in which said members distribute electric power; that the economic growth of at least portions of the area proposed to be served by Applicant's generating plan has been deterred by unavailability of sufficient amounts of economical electrical power; that the three major power systems in the area could reduce their bulk power supply costs by a significant amount through increased co-ordination of planning and operating activities including the establishment of reserve capacity for the area as a whole and by the installation of larger and more efficient generating units. Increased coordination would also provide more reliable service; that Applicant's plan is an inter-system arrangement to obtain the substantial benefits resulting from planning, construction, and operation of a bulk power supply. Specific advantages include the pooling of generation and transmission facilities and for the common good of all of the pool members. Participation in the installation of larger and more economic units would result in lower power costs which can be obtained by cooperation and by dealing for blocks of power. The Applicant's plan provides for central dispatching to be performed by Wheatland Electric Cooperative, which will help assure that the most economical source of supply is used at all times. It provides an organization also for the future planning of power supply for Applicant's members on a coordinated basis; that the construction of a generating unit in the Garden City, Kansas area

is in the public interest and will promote public convenience and necessity and that there is a need for the electric generation, transmission and related facilities proposed to be constructed by Sunflower; that the construction of such electric facilities will not duplicate any facilities of any other electric public utility.

"6. That it is in the public interest and that public convenience and necessity will be promoted by the granting to Applicant the certificate sought by its amended application, thereby enabling Applicant to perform and fulfill the contracts with its participating members as hereinafter designated subject to the limitations and restrictions specified herein.

"7. That in order to provide the area with a reliable bulk power supply capable of fully exploiting the generating unit and economic changes of power it is in the public interest and that public convenience and necessity will be promoted by authorizing Sunflower to operate and maintain, and to construct the electric transmission lines and related facilities sought by the amended application for the purpose of furnishing electric power and energy at wholesale for resale to any of its eight present participating members named hereinbefore; that the EL application filed by Sunflower simultaneously with its application herein for approval of the construction of certain proposed electric transmission lines and other facilities which Sunflower proposes to construct at the present time should be numbered EL Application No. 6643, and should be approved."

Conclusion of law number one reads:

"1. That it is in the public interest and the public convenience and necessity will be promoted by granting to Applicant a limited certificate of convenience and necessity in accordance with the provisions of K. S. A. 66-131, to construct the generating transmission and related facilities described in paragraph 4 of Finding of Fact hereof and to generally transact the business of an electric public utility for the generation, transmission and sale of electric energy at wholesale for resale to Great Plains Electric Cooperative, Inc., Northwest Kansas Electric Cooperative Association, Inc., Norton-Decatur Cooperative Electric Company, Inc., Western Cooperative Electric Association, Inc., Wheatland Electric Cooperative, Inc., Lane-Scott Electric Cooperative, Inc., Victory Electric Cooperative Association, Inc., Pioneer Cooperative Association, Inc., in and only in the certificated areas of these eight cooperatives located in the State of Kansas; that it is in the public interest and the public convenience and necessity will be served and promoted by the approval of the EL application referred to herein and by the approval of each of the agreements described in paragraph 9 of the Findings and Facts herein and the authorization of each of the parties to each of such agreements to perform the objectives provided for in such agreements and that the Applicant should have the right to engage in the planning and the making of such study as the Applicant may consider necessary or appropriate with respect to its system."

These quoted portions of the commission's order should be all that is essential to understand and discuss the contentions of the

appellants. In order to put this appeal in perspective it might be well to review first some of the statutory and case law which governs the judicial review of an administrative order.

The state corporation commission is an administrative agency and its authority and jurisdiction to supervise and control the public utilities in this state is conferred by statute. (See K. S. A. 66-101 and *Cities Service Gas Co. v. State Corporation Commission,* 197 Kan. 338, 416 P. 2d 736.) Orders of the commission are subject to review by the district court (K. S. A. 66-118c.) and on appeal by the supreme court (K. S. A. 66-118d). The statutory limits of the power of review are set forth in K. S. A. 66-118d as follows:

". . . Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order . . . inquired into and determined, and the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . ."

The statute ends with the following sentence:

". . . No court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided."

The need for supervision and control of electric public utilities was recognized by the legislature and by statute the legislature authorized a considerable degree of discretion to be exercised in the public interest. The discretionary authority was delegated to the commission, not to the courts. The power of review does not give the courts authority to substitute their judgment for that of the commission. In reviewing the commission's order the facts that are considered and the relative weight to be given them in making a decision are matters left to the commission's discretion unless the commission has acted unlawfully or arbitrarily without supporting evidence. (*Colorado Interstate Gas Co. v. State Corporation Comm.,* 192 Kan. 1, Syl. § 6, 386 P. 2d 266.) If the order of the commission is based upon substantial and competent evidence the order will generally be considered reasonable.

It may be said that an order of the commission is unreasonable if under all the circumstances it is arbitrary, and unjust. These questions must be determined by the trier of the facts, the commission. It is only when such determination by the trier of the facts is so wide of the mark as to be outside the realm of fair debate that the courts may nullify it. The same is true regarding the informed conclusions of fact made by the commission. (*Atchison,*

*T. & S. F. Rly. Co. v. State Corporation Comm.,* 182 Kan. 603, 322 P. 2d 715.)

The questions to be resolved by the reviewing court are whether the commission has the power to make the order, whether the procedural safeguards are followed and whether there is substantial and competent evidence to support the order. The reviewing court should not inject its own views into a review of the order. The wisdom, propriety or expediency in making such an order are not considerations for the court. (*Colorado Interstate Gas Co. v. State Corporation Comm.,* supra.)

In the present case no serious question has been raised by the appellants concerning the power of the commission to make the order. The questions raised as to procedural safeguards relate to the form and content of the commission's order and are closely associated with the question of the sufficiency of the evidence to support the order. These will be discussed together.

What are some of the considerations which should enter into determination of what constitutes substantial and competent evidence to support an order granting an enlarged certificate of convenience and authority?

The statute, K. S. A. 1969 Supp. 66-131, provides in part:

"No . . . public utility . . . shall transact business in the state of Kansas until it shall have obtained a certificate from the corporation commission that public convenience will be promoted by the transaction of said business and permitting said applicants to transact the business of a . . . public utility in this state: . . ."

In the present case questions are raised by the action of the commission in enlarging a certificate, not by the granting of an initial certificate to a public utility.

The commission is generally charged with the supervision and control of public utilities, subject only to statutory exceptions, and an applicant for a certificate must show that public convenience and necessity will be promoted by authorization of the plan for the electric facilities envisioned in the application. Public convenience means the convenience of the public, not the convenience of particular individuals. (*Missouri Pacific Rld. Co. v. State Corporation Commission,* 192 Kan. 575, 389 P. 2d 813.) Public necessity does not necessarily mean there must be a showing of absolute need. As used, the word "necessity" means a public need without which the public is inconvenienced to the extent of being handicapped.

In *Atchison, T. & S. F. Rly. Co. v. Public Service Comm.*, 130 Kan. 777, 288 Pac. 755, it was held:

"The public convenience and necessity or lack thereof is best established by proof of the conditions existing in the territory to be served, and it is the province of the public service commission to draw its own conclusions and form its opinion from the proof of the conditions in the territory. . . ." (Syl. ¶ 2.)

The statutes authorizing the commission to supervise and control corporate action in the utility field have been generally understood as an expression of the legislature's administrative policy designed to protect against ruinous competition, to promote adequate and efficient service and to limit the waste attendant on unnecessary duplication of facilities designed for the same purpose in the same area.

In *Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 251 Pac. 1097, the above policy was recognized and it was said:

". . . In determining whether such certificate of convenience should be granted [1] the public convenience ought to be the commission's primary concern, [2] the interest of public utility companies already serving the territory secondary; and [3] the desires and solicitations of the applicant a relatively minor consideration." (p. 466.)

It is in this frame of reference that we examine the contents and reasonableness of the commission's order.

The commission found there was a constant growth pattern of demand for electric energy in the area served by applicant's participating members. The finding is supported by adequate evidence and is not disputed. The commission found there is a present need for an additional source of power to serve the area in which the western Kansas consumer cooperatives distribute electric power. (There was testimony that several manufacturing plants were unable to obtain electric power for operation of their plants at a cost which was economically feasible.) Appellants attack the findings on the ground they are not basic findings of fact.

In *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 433 P. 2d 572, it was pointed out the commission is not required to state its findings with such minute particularity as would amount to a summation of all the evidence. In view of the 900 page record in this case the reason is obvious. However, the commission does have the responsibility of expressing the basic facts on which it relies. These facts when found and expressed should be adequate to advise the parties, as well as the courts, of the stan-

dards applied which governed its determination and persuaded it to arrive at its decision. (*Kansas Transport Co., Inc. v. State Corporation Commission,* 202 Kan. 103, 446 P. 2d 766.)

In addition to the constant growth pattern of demand for electric energy in this area and the finding of a need for an additional source of power to serve the area, the commission set forth the following standards which it applied and which persuaded it to arrive at its decision. Economic growth in portions of this area had been deterred by lack of economical electric power. The plan of applicant could reduce the bulk power supply costs to the consumer cooperatives. The plan could increase coordination among the consumer cooperatives and provide more reliable service to their customers. Specific advantages to these member cooperatives were recognized from pooling facilities and from central dispatching by Wheatland. The commission found the plan provided an organization for future planning of the common power supply and that the construction of the generating unit in the Garden City area was in the public interest in that it would provide the public in that area with needed electric power. Finally the commission found the plan would not duplicate any facilities of any other electric public utility.

We believe that these basic findings are adequate as to form and content to advise the parties, as well as the courts, of the standards applied which governed the commission's determination and persuaded it to arrive at its decision.

Appellants further attack these findings on the ground they are not supported by the testimony. The testimony elicited from the applicant's witnesses was in direct conflict with the testimony given by the opponents of the plan. Testifying for the applicant were the managers and presidents of the various southern consumer cooperatives and a consulting engineer hired by the applicant to compile the power cost study supporting the plan. In opposition we have the testimony of the presidents of four of the investor owned utilities and of two consulting engineers hired by them. The subjects explored by both sides covered a wide area. These subjects included all matters listed in finding number five of the commission's order. Special emphasis was directed toward the adequacy of the present sources of electric power, the economic feasibility of the plan and the amount of reduction in power costs to be anticipated under this plan. There was a wide variance in the testimony. For instance, the engineer for the cooperatives

testified to a possible saving based upon his power cost study of nearly $8,000,000. On the other hand, the engineers for the opponents testified to a possible increase in power costs by using this same power cost study and discounting various items used by the author in the study.

Nothing can be gained by making a comparison of conflicting testimony. The commission is the trier of the facts. The commission had the expertise through its staff to sift and evaluate this conflicting testimony. It is apparent from the record that all matters bearing upon the plan of Sunflower were thoroughly explored and considered by the commission. We cannot substitute our judgment for that of the commission.

Under the plan approved Sunflower cannot make direct sales to ultimate customers. It may only sell at wholesale to its present participating member cooperatives who resell to the ultimate consumer. Neither Sunflower nor the consumer cooperatives have been granted additional territory. Although it is true the territories of Central Kansas Power Company and of Central Telephone & Utilities Corporation overlap in some areas with these western Kansas cooperatives, this overlapping existed prior to the present application.

The question, therefore, is not one of certifying territory. It is one of administrative policy. Where should the electric energy necessary to supply the demand in the area served by these consumer cooperatives be generated? The investor owned utilities say they can and will furnish adequate economical electric power from large generating plants in eastern Kansas by installing a power loop in the western Kansas area. The electric consumer cooperatives in western Kansas say adequate economical electric power should be furnished locally by installing a large generating plant in the area to be served. The commission is in a better position to evaluate and weigh the factors necessary to reach a proper decision on these questions in the public interest. This they have done.

Several other points raised by the appellants deserve comment.

Some of the appellants, who were intervenors in the hearing before the commission, assert it was error for the commission to refuse their motion for continuance. They insist they needed more time to prepare their defense to the application and to evaluate the power cost study promulgated by the chief witness for the cooperatives.

Rule 82-1-226 of the rules of practice and procedures of the state corporation commission of Kansas, authorized by K. S. A. 66-106, provides that continuances, extensions of time and adjournments may be requested, and that such requests may be granted or denied by the commission in its discretion. The quality and quantity of the cross-examination of the witnesses for applicant as well as the effectiveness of appellants' own witnesses disprove any prejudicial error. No abuse of discretion has been shown.

Appellants complain because the commission by its order approved various agreements between the cooperatives. These agreements were attached to the application. Appellants insist the agreements are illegal and should not have been used to support the application. The parties to these agreements did not attack or disaffirm them. K. S. A. 66-108 requires contracts between utilities pertaining to any and all services to be rendered by such public utilities to be filed with the commission. Filing alone is required by the statute. The commission is not the forum to judge the validity or legality of agreements entered into between these cooperatives. In *Cities Service Gas Co. v. State Corporation Commission*, 197 Kan. 338, 416 P. 2d 736, the rule was succinctly stated:

". . . The corporation commission provides no forum for the litigation of purely private rights and liabilities." (p. 342)

Appellants contend they have expended large sums of money in the construction of electric transmission systems to serve this area, and we agree. They further contend that the commission's order discriminates against the rights of the appellants and takes or destroys their property without just compensation in violation of the constitution of Kansas and of the United States.

Before answering this contention it should be noted that no existing contracts are affected by the order. Any contracts to purchase electric power from the investor owned utilities remain in full force and effect. The rights of the appellants in and to their entire physical facilities remain unchanged. There will be no duplication or overlapping of territories or facilities which did not exist prior to the present order. The loss of revenues from open sales of energy in excess of contracted amounts may result, but this is not a loss of any present property right. The losses will result, if at all, from competition made possible by increasing the generating capabilities of Sunflower.

The function of the commission is administrative in character and the review procedures provided by the statutes are necessarily

limited in scope. In determining whether the certificate of authority should be granted the primary concern of the commission, public convenience and necessity, should not be allowed to expand into judicial areas of concern, such as a claim of confiscation of property or of impairment of vested rights. The rule was expressed in *Kansas Gas & Electric Co. v. Public Service Co.*, supra:

". . . In the granting or withholding of certificates of convenience no justiciable question touching confiscation of property or impairment of vested rights can well arise. . . ." (122 Kan. 462 at p. 468).

We have carefully examined all points raised by the appellants. What has been said disposes of the major points raised and other matters not mentioned are not considered to be determinative of the ultimate question, the reasonableness of the commission's order.

The judgment is affirmed.