(610 P.2d 121)

No. 51,519

KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., *Appellant,* v. STATE
CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee.*

Petition for review denied June 20, 1980.

Opinion filed April 25, 1980.

*Larry D. Hall* and *Richard C. Byrd,* of Anderson, Byrd & Richeson, of Ottawa, for the appellant.

*Elizabeth R. Herbert,* Assistant General Counsel, Kansas Corporation Commission, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

PARKS, J.: In July 1978, the appellant Kansas-Nebraska Natural Gas Company (referred to hereafter as K-N), a public utility operating within the State of Kansas, filed an application based on a test year ending December 31, 1977, for rates sufficient to produce increased revenue in the amount of $3,700,035. The

Kansas Corporation Commission (KCC) considered the application and approved rates which increased revenues by $604,464. Rehearing was denied and K-N appeals.

It is undisputed that this court has exclusive jurisdiction to review orders of the KCC involving public utility rates (K.S.A. 1979 Supp. 66-118a) and that we are limited to determining whether the order is lawful or reasonable (K.S.A. 1979 Supp. 66-118d). Other well established rules regarding our scope of review are summarized in *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 380, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979), and *Sekan Electric Coop. Ass'n v. Kansas Corporation Commission,* 4 Kan. App. 2d 477, 609 P.2d 188 (1980). In sum, to be lawful a KCC order must be made within the statutory authority of the Commission; to be reasonable it must be supported by substantial competent evidence.

## I.

K-N contends that the KCC order is both unlawful and unreasonable. It further argues that the approved rates are confiscatory and violate its constitutional right to due process because they would not produce a reasonable return or just compensation upon the value of its property. K-N's argument relating to confiscation attempts to broaden our scope of review to include an independent judicial judgment on the facts as well as the law.

The statutory standard of K.S.A. 1979 Supp. 66-118d requiring "reasonable" utility rates is higher than the constitutional standard for due process. In other words, a rate cannot be confiscatory if it is reasonable. Therefore, even if the scope of review is broader for a due process complaint, a determination that a rate order is reasonable would logically preclude consideration of an allegation of confiscation. In *Power Comm'n v. Hope Gas Co.,* 320 U.S. 591, 88 L.Ed. 333, 64 S.Ct. 281 (1944), the U.S. Supreme Court said, "If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry  .  .  .  is at an end." *Hope,* 320 U.S. at 602. The Court also said, "Since there are no constitutional requirements more exacting than the standards of the Act, a rate order which conforms to the latter does not run afoul of the former." *Hope,* 320 U.S. at 607. Accordingly, our review is limited to the statutory standard of K.S.A. 1979 Supp. 66-118d.

## II.

We now turn our attention to the general allegations of K-N that

(1) the order lacks sufficient findings of fact and conclusions of law, (2) the KCC failed to consider all of its testimony, and (3) the KCC adopted an unduly strict accounting viewpoint.

K-N's argument that the KCC failed to comply with its own rule, K.A.R. 82-1-232 (a) (3), is premised on the allegation that the order does not "contain a concise and specific statement of the relevant law and basic facts" which persuaded the Commission in making its decision. This rule is designed to facilitate judicial review and to avoid unwarranted judicial intrusion into administrative functions. The Commission must, therefore, express the basic facts upon which it relied with sufficient specificity to convey to the parties, and to the courts, an adequate statement of facts which persuaded the Commission to arrive at its decision. *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 744-45, 433 P.2d 572 (1967). We have experienced no problem in determining what the KCC held or what matters it considered in reaching its conclusions. Instead, we found that the order—80 pages in length—summarized the position of the Staff and K-N on each of the issues and accepted one position or the other in its conclusions. Thus we are permitted a meaningful review of the issues without having to search the record or to infer outside facts.

Concerning K-N's argument that the KCC disregarded its evidence in making its order, we note that some arguments presented by K-N were adopted by the Commission and that the position of both the K-N and Staff were set forth in the order on all disputed points.

K-N further alleges that the KCC placed undue emphasis on accounting evidence and failed to consider other important aspects of rate-making. This allegation may be answered by the following statement:

"The power of review does not give the courts authority to substitute their judgment for that of the commission. In reviewing the commission's order the facts that are considered and the *relative weight to be given them in making a decision are matters left to the commission's discretion unless the commission has acted unlawfully or arbitrarily without supporting evidence. (Colorado Interstate Gas Co. v. State Corporation Comm.,* 192 Kan. 1, Syl. ¶ 6, 386 P.2d 266.) If the order of the commission is based upon substantial and competent evidence the order will generally be considered reasonable." *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971). (Emphasis added.)

### III.

Of more concern is K-N's contention that the "used or required to be used" standard was improperly applied by the KCC in determining the K-N rate base. K.S.A. 1979 Supp. 66-128 provides a guideline for the determination of a rate base by prescribing that only property used or required to be used must be evaluated. It further states that property of any public utility which has not been completed and dedicated to commercial service shall not be deemed to be used or required to be used in its service to the public except that any property of a public utility, the construction of which will be completed in one (1) year or less, *may* be deemed to be completed and dedicated to commercial service.

Recently our Supreme Court interpreted K.S.A. 1979 Supp. 66-128 to mean that the "inclusion or exclusion of CWIP [construction work in progress] in the rate base [is] a discretionary function of the Commission to be based upon a factual determination, from the evidence submitted, whether the requested CWIP was 'property . . . used or required to be used in its services to the public within the state of Kansas . . . .' (K.S.A. 66-128.)" *Kansas City Power & Light Co. v. KCC,* 224 Kan. 86, 88, 578 P.2d 254 (1978). Thus, the KCC cannot automatically exclude construction work because it is not completed without also determining that it is not required to be used. The court further held that the inclusion of CWIP continues to be a discretionary matter for the Commission only to the extent that it will be completed in one year or less. Based on these rulings, we now turn to K-N's argument that the KCC improperly excluded two items from the rate base.

A. Gas Wells Completed but Not Connected.

K-N sought to have the expenses relating to 48 gas wells which were completed but not connected to a gathering system included in the rate base. The Staff recommended that the wells be excluded because they were not connected to a gathering system and were not used or required to be used to provide service to ratepayers at the end of the test year. K-N contended that the wells were required to be used for service because "they are an inventory of gas reserves which assures continued deliverability." The order in this case stated that K.S.A. 1979 Supp. 66-128 "does not allow the inclusion in rate base of utility property merely because it is 'useful' in service of the public; with the exception of plant

under construction to be completed within one year, only the property 'used or required to be used' in serving the public is to be included in rate base." The KCC then found that until such time as these wells are furnishing gas to applicant's gas system, the wells and their related equipment would not be included in applicant's rate base.

K-N argues that the KCC conclusion is unlawful and unreasonable because: (1) The order did not specify adequate findings of fact and conclusions of law; (2) the conclusion that the wells are "useful" is equivalent to a finding that they are required to be used; and (3) the KCC did not properly consider the benefit of property held for future use, but automatically excluded it if it was not used by the end of the test year.

With regard to the first argument, it is clear from the order that the KCC recognized the ultimate usefulness and importance of gas reserves to the ratepayers but held that since the 48 wells were not furnishing gas to K-N's system, they would not be included in the rate base. We find this decision states sufficient facts and conclusions to permit our review.

We next turn to K-N's argument that the KCC's finding that the wells were "useful" is equivalent to a finding that they were "required to be used." Many other jurisdictions state the test for rate base includability in terms of whether the property is "used and useful." 73 C.J.S., Public Utilities § 18. As acknowledged in *Kansas Gas & Electric Co. v. State Corporation Commission,* 218 Kan. 670, 675-76, 544 P.2d 1396 (1976), this test is basically the same as the "used or required to be used" phraseology employed by K.S.A. 1979 Supp. 66-128. This does not mean, however, that property which is merely useful is required to be used. The "used and useful" standard is a two-part test: property must be *both* used and useful to be included in the rate base under this test. The Kansas standard of includability is disjunctive; property must be included in rate base if it is either used or required to be used; *i.e.,* if not in actual use, its use must be necessary. Property may well be useful without being either used or required to be used. We therefore hold that a finding that property is "useful" is not equivalent to a finding that it is "used" or "required to be used."

Concerning the final argument, it must first be emphasized that the used or required to be used standard is a discretionary test.

The Commission may not, however, arbitrarily exercise this discretion by substituting a time limit by which property must be used to be required. The necessity of owning or developing this property for the future benefit of present ratepayers must be considered. Inasmuch as K-N failed to sustain its burden of proving that the wells were used or required to be used, we cannot say in this case that the KCC abused its discretion in excluding the wells from the rate base. However, a more detailed explanation of the reasoning of the KCC would be helpful in the future to reassure this court that the KCC is exercising its discretion properly.

B.   Advance Payment.

In 1973, K-N assigned to Midlands Gas Corporation, its wholly owned subsidiary, the right to acquire leases in an area of Montana known as the Bowdoin Field. The two companies entered into a contract by which K-N paid Midlands a $10 million advance for developing and exploring that area in return for the right to purchase the gas produced. Midlands was required to drill at least 100 net wells each year in 1974, 1975 and 1976 and to pay $33,333.33 for each well short of the 100 required. K-N was also to recover the amount of the advance by retention of 50% of the sales price of gas sold or 50% of the take-or-pay payments required of K-N under the contract. The contract further provided that if K-N had not recovered the amount of its advance in five years, Midland would repay the remaining balance. This contract was subsequently amended in 1975 and 1976.

The KCC concluded that the remaining advance payment of $1,812,225 could be included in the rate base only if it was used or required to be used to provide service to Kansas ratepayers and that the State of Kansas was not bound by the fact that the Federal Energy Regulatory Commission (FERC) had approved the specific contract between Midlands and K-N. The Commission excluded the advance payment from the rate base, concluding that while the ultimate benefit of exploration and development was apparent, the contract was not proven to be required.

The FERC's regulation of the advance payment contract with an affiliate does not preclude KCC's scrutiny of the agreement to determine whether it is *required* for service to the ratepayers. Application of this discretionary test could involve weighing the future benefit to ratepayers against the costs extracted by the

contract to assure that the former is not too speculative in light of the latter. Once again, this type of evaluation is reserved for the discretion of the KCC, and this court may not substitute its judgment in the absence of an abuse of that discretion.

Here, the KCC determined that K-N sacrificed important benefits in negotiating amendments to the contract. It is not unreasonable to conclude that these sacrifices could negate the benefits of exploration by increasing the costs of the contract. We therefore hold that the KCC's exclusion of the advance payment was not an abuse of discretion.

### IV.

K-N has challenged the accounting methods applied by the KCC to several items of the rate base, including unsuccessful exploration and development costs, gas stored underground-non-concurrent, depreciation, amortization and depletion of jurisdictional reserves, and accumulated depreciation-general. The issues raised with regard to these items involve technical accounting decisions which are precisely the type of questions best determined by the expertise of the KCC. It is only when such decisions are so wide of the mark as to be outside the realm of fair debate that this court may nullify them. *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 217 Kan. 604, 617, 538 P.2d 702 (1975).

After carefully reviewing the record and order of the KCC with regard to these items, we conclude that there was substantial competent evidence to support the KCC's accounting methods. The rate base adjustments approved by the KCC are therefore reasonable.

### V.

The next point raised by K-N concerns the KCC's reduction of working capital to reflect an average tax accrual balance. Tax accruals are sums collected from ratepayers which must be periodically forwarded to various taxing authorities. The working capital allowance does not generally include tax accruals because these funds provide the utility with a positive source of cash which may be used in place of funds usually supplied by investors. To include tax accruals in the rate base would be to require ratepayers to pay a return on funds already supplied by them in the form of prepaid taxes. *Gas Service Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 623, 609 P.2d 1157 (1980).

It was not K-N's contention that tax accruals should be a part of working capital. Their reasoning was that because the tax accruals corresponded roughly to an amount required for compensating bank balances, rather than adding a sum for compensating bank balances and then subtracting a comparable figure for tax accruals, they offset both amounts from their working capital computation.

Compensating bank balances are those balances which banks require businesses to maintain in order to insure a line of credit. After Staff adjusted working capital to exclude tax accruals, K-N sought to present evidence on rebuttal that it was required to maintain minimum and compensating bank balances which should offset the tax accruals. K-N did not offer any evidence to indicate that credit could not be obtained without maintaining these balances. On surrebuttal, Staff testified that K-N was apparently attempting to include the compensating bank balances in the rate base via an offset against an item clearly not includable—tax accruals—without presenting any supporting evidence for treating the expenses as working capital. Staff further testified that the compensating bank balances should not be included in working capital because the stockholders and not the ratepayers are benefited by the K-N's ability to obtain a line of credit at a lower interest rate.

The KCC properly excluded tax accruals from working capital and placed the burden on K-N to justify inclusion of the compensating bank balances. The KCC found that K-N did not meet this burden; however, the order used an inappropriate choice of words in describing this failure by stating that there was a lack of "compelling" evidence. The proper burden of proof which K-N had to meet was a preponderance of the evidence. The mention of an improper standard, however, does not invalidate the order if there is substantial competent evidence to support the KCC's decision under the proper standard of proof and no bias or prejudice is apparent from the recitation of the higher standard. *Kansas-Nebraska Natural Gas Co.*, 217 Kan. at 614.

The inclusion of compensating bank balances in the working capital is an issue on which the various jurisdictions are split. *Cf. Re Potomac Electric Power Co.*, 1 Pub. U. Rep. 4th 238, 264 (Md. 1973); *Re South Central Bell Teleph. Co.*, 22 Pub. U. Rep. 4th 281 (Tenn. 1977); and *Pennsylvania PUC v. Duquesne Light Co.*, 16

Pub. U. Rep. 4th 36 (Pa. 1976), with *Boston Edison v. Dept. of Public Utilities,* 375 N.E.2d 305 (Mass. 1978); *Re Iowa Pub. Service Co.,* 21 Pub. U. Rep. 4th 339 (S.D. 1977); and *Re Missouri Public Service Co.,* 25 Pub. U. Rep. 4th 24 (Mo. 1978). In light of Staff testimony that the balances assure a lower interest rate, and absent proof that the maintenance of these bank balances is a necessary operating expense without corresponding income, we cannot say that the order of the KCC excluding compensating bank balances from working capital is unreasonable.

VI.

The next point appealed by K-N involves the figures adopted by the KCC for Kansas pro forma sales. Since K-N serves several jurisdictions, its costs are figured on a system-wide basis and a ratio must be computed to allocate the proportionate share of cost of service to each jurisdiction. This is accomplished by adding up total Kansas sales and total annual sales and then dividing the former by the latter to arrive at an allocation ratio. The computation of each of these sales figures must be normalized and annualized to reflect an average year's conditions. This allocation ratio is then applied to the various expenses and taxes which make up the cost of service to Kansas.

In K-N's application, it proposed an allocation ratio which was apparently normalized. Staff accepted this ratio as one which appeared appropriate for the utility and its operating conditions, but disagreed with the actual figure put forth by K-N to represent Kansas sales. The KCC accepted Staff's adjustments to pro forma sales and K-N now contends that this was error. Since annualized Kansas sales are used to compute Kansas operating revenues and revenue deficiency as well as the allocation ratio, K-N contends that Staff's adjustments to Kansas sales without corresponding adjustments to other system sales resulted in double normalization.

The conflict between the parties is essentially a mathematical dispute. The allocation ratio is simply a proportion of similarly computed figures. Once that ratio is accepted, adjustments to the figures used to compute the numerator or denominator of that ratio do not necessitate recomputation of the ratio so long as the normalization or adjustment techniques would have a proportionate effect on the remaining half of the ratio. This is the heart of the disagreement between K-N and the KCC. K-N presented

testimony that the effect of the Staff's normalization methodology on the other jurisdictional sales would not be proportionate to the changes brought about in the Kansas sales figure. The KCC agreed with Staff's assessment of both the Kansas sales and the allocation ratio.

Once again, it must be remembered that the legislature has vested the KCC with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, 511, 561 P.2d 779 (1977). The testimony of K-N regarding the computation of operating revenues was not sufficient in the eyes of the KCC to meet its burden of proof. We cannot say that this determination was so wide of the mark as to be outside the realm of fair debate and therefore find that the KCC did not err in figuring Kansas pro forma sales.

## VII.

The final point raised by K-N concerns the KCC's exclusion of certain rebuttal testimony. Generally, a trial court's ruling with regard to the admissibility of testimony offered in rebuttal will not be grounds for reversal unless the court abused its discretion to the prejudice of appellant. *Ellis v. City of Kansas City,* 225 Kan. 168, 176, 589 P.2d 552 (1979). Furthermore, to find an abuse of discretion an appellate court must determine that no reasonable person could take the view adopted by the trial court. *In re Pennington,* 224 Kan. 573, 577, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979). The review of an evidentiary ruling of an administrative body involves the same test of discretion. Here the testimony presented as rebuttal by K-N could reasonably have been viewed as contradictory to the evidence presented in its case in chief. Therefore, we find that the KCC did not abuse its discretion in excluding this testimony.

## VIII.

We hold that the order of the KCC is lawful and reasonable and must be affirmed.