(650 P.2d 747)
No. 54,266

ASH GROVE CEMENT CO., *et al., Applicants,* v. THE STATE CORPORA-
TION COMMISSION, R.C. Loux, Chairman, Jane T. Roy and Phil-
lip R. Dick, Commissioners, and their successors in office as
members of the State Corporation Commission of the State of
Kansas, *Respondents.*

Opinion filed Sep-
tember 10, 1982.

*Robert C. Johnson,* of St. Louis, Missouri, and *Thomas M. Van Cleave, Jr.,* of
McAnany, Van Cleave & Phillips, P.A., of Prairie Village, for the applicants Ash
Grove Cement Co., *et al.*

*Patrick H. Donahue* of Kansas Legal Services, Inc., of Topeka, for the applicant
Grace Judd.

*Curtis M. Irby,* assistant general counsel, and *Brian J. Moline,* general counsel,
for the respondent Kansas Corporation Commission.

*James Haines* and *Ralph Foster,* of Wichita, for the respondent Kansas Gas and
Electric Company.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

*Per Curiam:* This case is a consolidation of two separate appli-
cations for judicial review of orders issued by the Kansas Corpo-
ration Commission (hereinafter "Commission") on December 31,
1981, and on February 18, 1982, in Commission Docket No. 128,
139-U concerning an application by Kansas Gas and Electric
Company (hereinafter "KG&E") to increase its charges for elec-
tric service.

In its application, filed with the Commission on May 11, 1981,

KG&E proposed a $13,872,537 interim increase be made permanent and sought a further permanent increase in gross annual retail revenues of $63,711,898. Grace Judd, an elderly widow living alone on a low income, and Goldia Peterson, similarly situated, petitioned for leave to intervene, alleging they would be adversely affected by the proposed rate increase. K.A.R. 82-1-225(a)(3). The Commission issued an order on June 16, 1981, granting Judd and Peterson status as party intervenors. The Commission subsequently granted leave to intervene to certain industrial companies and hospitals, among them Ash Grove Cement Company (hereinafter "Ash Grove").

On October 6, 1981, following the Commission's procedure outlined in K.A.R. 82-1-225(c), Judd and Peterson, as party intervenors, petitioned the Commission for affirmative relief. In their petition they alleged that, as applied to them and others similarly situated, KG&E's proposed rate for residential service, Code 2, would be an unjust and unreasonable classification which would produce an unjust and unreasonable rate in violation of K.S.A. 66-107. They requested the Commission order KG&E to establish a special residential rate class and rate for low-income senior citizens designed to insure that senior citizens eligible for such special rate would receive reasonably sufficient electric service, a so-called "lifeline" rate. No other intervenor petitioned for affirmative relief. Both Grace Judd and Goldia Peterson, through counsel, participated fully in the proceedings, calling eight witnesses in support of their position.

The Commission, on December 31, 1981, issued an order which granted in part and denied in part KG&E's application for rate changes. The petition by Judd and Peterson for affirmative relief was denied. Applicants Judd and Peterson, as well as the hospitals and industrial intervenors, filed applications for rehearing pursuant to K.S.A. 66-118b and K.A.R. 82-1-235. The Commission heard oral arguments and on February 18, 1982, denied the applications for rehearing.

The hospitals and industrial intervenors made timely application for judicial review of the orders of the Commission pursuant to K.S.A. 66-118a. Grace Judd also made application for judicial review of the orders of the Commission. (Goldia Peterson died January 12, 1982, and is not a party to this appeal). The Court of Appeals, with agreement of the parties, ordered consolidation of

the two cases. KG&E was allowed to appear as a respondent in the action.

Grace Judd challenges the reasonableness and lawfulness of the Commission's orders denying her affirmative relief; Ash Grove challenges the Commission's decision to exclude certain testimony offered in rebuttal to the "lifeline" rate proposals inherent in Grace Judd's application for affirmative relief.

The appellate scope of review of orders or decisions of the Commission is limited to a determination of whether such orders or decisions are lawful and reasonable. See, *e.g., Kansas Gas & Electric Co. v. State Corporation Commission,* 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). The court elaborated on this standard of review in *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979) (hereinafter "Midwest I"):

"A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, 396-7, 565 P.2d 597 (1977). An order is 'lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered 'reasonable' if it is based on substantial competent evidence. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, Syl. ¶ 2.

"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 48-9, 386 P.2d 515 (1963). Hence a court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it. *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 217 Kan. 604, 617, 538 P.2d 702 (1975); *Graves Truck Line, Inc. v. State Corporation Commission,* 215 Kan. 565, Syl. ¶ 5, 527 P.2d 1065 (1974)."

Applicant Judd first argues the Commission acted unlawfully and unreasonably in denying her affirmative relief on the

grounds she had not proposed specific tariffs nor proposed a cost-based study.

The Commission, in its brief and at oral argument, stated that Judd had no duty to propose specific tariffs nor was a cost-of-service study required. The Commission argues that references in the orders to specific tariffs and cost-based studies point to deficiencies in Judd's presentation *when compared with* evidence presented by other parties. The Commission had before it detailed data from KG&E. In comparison, Judd's witnesses largely relied on socio-economic considerations. The Commission has discretion to weigh and accept or reject testimony presented to it. *Kansas-Nebraska Natural Gas Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 674, 676, 610 P.2d 121, *rev. denied* 228 Kan. 806 (1980); *Midwest I,* 3 Kan. App. 2d at 389. We are convinced from our review of the orders in question that the Commission comments were directed to the weight of the evidence before it. No impermissible requirements were placed on intervenor Judd.

Judd next argues the Commission, in denying the intervenors' request for affirmative relief, failed to comply with K.S.A. 66-110, which provides in pertinent part:

"It shall be the duty of the commission, either upon complaint or upon its own initiative, to investigate all rates, joint rates, fares, tolls, charges and exactions, classifications or schedules of rates, or joint rates and rules and regulations, and if after full hearing and investigation the commission shall find that such rates, joint rates, fares, tolls, charges or exactions, classifications or schedules of rates or joint rates, or rules and regulations, are unjust, unreasonable, unjustly discriminatory or unduly preferential, the commission shall have power to fix and order substituted therefor such rate or rates, fares, tolls, charges, exactions, classifications or schedules of rates or joint rates and such rules and regulations as shall be just and reasonable."

During direct testimony of Judd's witness, Dr. Thomas Michael Power, it was revealed the Commission had done an internal study entitled "Lifeline Electric Rates: Kansas Residential Energy Consumers, Minimum Electric Needs and Customer Eligibility Criteria" in preparation for Docket No. 115,379-U, a specific consideration of the lifeline rate issue. That investigation would seem to fulfill the Commission's duty under K.S.A. 66-110.

Applicant Judd next challenges the sufficiency of the Commission's findings of fact relating to the rate design issue. Judd's argument centers on two alleged deficiencies in the findings of

fact: failure to comment on the evidence presented by her own witnesses, and lack of specificity as to why the KG&E proposal was chosen. She makes no challenge to other sections of the December 31, 1981, order.

K.A.R. 82-1-232 provides in pertinent part:

"Formal orders of the state corporation commission shall conform in substance to the following rules: (a) . . . .

. . . . .
"(3) The order shall contain a concise and specific statement of the relevant law and *basic facts which persuade the commission* in arriving at its decision." Emphasis added.

See generally, *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, Syl. ¶ 5, 433 P.2d 572 (1967).

The purpose of findings of fact as mandated by K.A.R. 82-1-232(a)(3) is to facilitate judicial review and to avoid unwarranted judicial intrusion into administrative functions. The Commission must, therefore, express the basic facts upon which it relied with sufficient specificity to convey to the parties, and to the courts, an adequate statement of facts which persuaded the Commission to arrive at its decision. *Kansas-Nebraska Natural Gas Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d at 676. See also *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, Syl. ¶ 4, 440 P.2d 660 (1968); *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, Syl. ¶ 2; *Midwest I,* 3 Kan. App. 2d at 393.

The portion of the December 31, 1981, order referring to rate design deals with the intervenors' lifeline rate issue as follows:

"Intervenor Kansas Legal Services presented several witnesses in support of a 'lifeline' rate for the low income elderly. The Commission, after reviewing that testimony finds that the concepts and rationale indicated by those witnesses, and particularly Thomas Michael Power, is quite interesting and thought provoking. However, no specific tariffs are proposed and the Commission is of the opinion that this issue requires further study."

Disposition of that issue was clarified in the order of February 18, 1982, wherein the Commission stated:

"Likewise, the Order as it pertains to rate design clearly reflects that the application for affirmative relief as filed by the Intervenors Grace Judd and Goldia Peterson was denied."

The order of December 31 makes note of the fact that Earnest A. Lehman had presented rate design testimony on behalf of

KG&E. The Commission then summarized the testimony of several witnesses who appeared on behalf of the intervenors and found:

"However, the Commission finds that Applicant's rate design proposals are supported by substantial, competent evidence and should be adopted."

This conclusion was followed by:

"The Commission is concerned about the increasing level of customer charges. Applicant is directed to file a detailed analysis of the composition of its customer charges including the accounts from which the charge is calculated. The Commission will closely scrutinize any proposed increases in customer charges.

"We therefore direct Applicant to file with the Commission tariffs and rates to put into effect the findings of the Commission, and direct that staff carefully examine the proposed rates submitted as a result of these proceedings, and that upon approval of the Commission, Applicant should be permitted to place into effect such revised tariffs on sales rendered on and after the date of the Commission's approval, which based on operation and the test year will produce an annual increase of approximately $48,901,000."

It is significant that the testimony of Earnest A. Lehman, who presented rate design testimony on behalf of KG&E, is not summarized. This court does not intend to encourage a minimal finding standard. We believe the Commission might well have summarized the rate design proposals of KG&E and made specific findings based thereon. Such would certainly have made a more adequate record for judicial review. However, findings do not have to be stated with such particularity as to amount to a summation of all the evidence. *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 677, 482 P.2d 1 (1971). Furthermore, this court has said that the matter of rate design involves a policy decision which is legislative in nature and that the Commission's orders in that regard demand utmost deference from the judicial branch. *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 5 Kan. App. 2d 653, Syl. ¶ 3, 623 P.2d 924, *rev. denied* 229 Kan. 670 (1981). From the record before us we conclude the findings as set forth provide an adequate explanation of the Commission's reasoning in arriving at its decision.

Applicant Judd finally contends the Commission erred in excluding portions of Dr. Thomas Michael Power's testimony relating to a lifeline rate study done by Commission staff. The contention is without merit. Although portions of Dr. Power's testimony were excluded as hearsay, the Commission did, at the request of Judd's attorney, take administrative notice of the study.

The exclusion of evidence is not prejudicial where the facts sought to be established thereby are otherwise shown, and the party seeking to reverse a judgment because of excluded evidence has the burden of showing prejudice as well as error. *Schmidt v. Farmers Elevator Mutual Ins. Co.,* 208 Kan. 308, Syl. ¶ 1, 491 P.2d 947 (1971). Applicant Judd has shown no prejudice.

The Commission's orders appearing lawful and reasonable, we need not reach the issue raised by Ash Grove for consideration in the event of remand.

Affirmed.