No. 47,832

Kansas Gas and Electric Company, *Appellee,* v. The State Corporation Commission of the State of Kansas, *Appellant.*

(544 P. 2d 1396)

Opinion filed January 24, 1976.

*Sard Fleeker,* of Topeka, argued the cause and was on the brief for the appellant State Corporation Commission.

*Ralph Foster,* of Wichita, argued the cause and was on the brief for the appellee Kansas Gas and Electric Company.

The opinion of the court was delivered by

Kaul, J.: This appeal stems from an application filed by appellee, Kansas Gas and Electric Company (hereafter referred to as KG&E) with the State Corporation Commission (hereafter referred to as the commission) seeking an increase in electricity

service rates. The crux of the controversy centers around the commission's exclusion from KG&E's rate base one-third of its interest in a new electric generating facility, which is referred to as the La Cygne plant.

The La Cygne plant is a jointly-owned facility. One-half is owned by KG&E and the other one-half is owned by the Kansas City Power and Light Company (hereafter referred to as KCP&L). The cost of operation is equally shared by the two companies and the generating capacity is for practical purposes equally apportioned.

KG&E filed its application on August 31, 1973, seeking a rate increase amounting to approximately 13.5 million dollars. The commission docketed the application as No. 99,486-U and hearings were held, commencing January 28, 1974, and running through February 1, 1974. On March 29, 1974, the commission entered its order granting a rate increase of approximately 8.3 million dollars, the difference resulting from the allocation of only sixty-six and two-thirds percent of KG&E's interest in the La Cygne plant to rate base. KG&E's motion for rehearing was denied.

Thereafter, on May 14, 1974, KG&E filed its notice of appeal with the district court of Neosho County. The relief requested was that those portions of the commission's order which excluded thirty-three and one-third percent of KG&E's interest in the La Cygne plant be found to be unlawful, unreasonable, arbitrary and confiscatory and be set aside.

On October 14, 1974, the district court set aside the commission's order and ordered that KG&E's full investment in the La Cygne plant be included in the rate base and that appropriate rates be filed with the commission giving effect to the district court's judgment.

The court rested its decision on two propositions; one that the commission's order was not authorized by statute; and two that it was not supported by any evidence. The court specifically found there was no evidence to support the commission's order allocating only sixty-six and two-thirds percent of the utility's investment in the La Cygne facility. The court further stated that it was unable to find any legal authority, and that none was cited to it, enabling the commission to ascertain the value of a utility's property and then apply a fraction of that value for the determination of a rate base. The court concluded that:

". . . [A] generating plant is a unit and it is either used or required to be used, or not used or not required to be used, and therefore it should be included in full or excluded in full. . . ."

Thereafter, KG&E submitted new rate requests as allowed by the district court and these rates were approved by the commission on October 29, 1974. However, the commission qualified its approval by ruling that the excess rates above those allowed by the commission's original order be held by the utility subject to refund with interest in case the district court's judgment should be reversed. KG&E objected to these refund conditions in a limited notice of compliance, but apparently the commission took no action with regard to the objections. On January 21, 1975, on the grounds that the commission had taken no action on its objections, KG&E filed a motion in the district court to enforce the judgment of October 14, 1974, by compelling the commission to strike and remove the refund and interest conditions in the commission's October 29, 1974, order.

On March 12, 1975, the district court issued its order setting aside all parts of the commission's order, which made the new rates subject to refund and interest.

During the pendency of these proceedings, further hearings were had before the commission in another rate increase application filed by KCP&L, KG&E's co-owner of the La Cygne plant. The commission previously had excluded one-third of KCP&L's half interest in the La Cygne plant from its rate base, but after hearings on November 15, 1974, the commission determined that the La Cygne plant was now operating properly, and that it could, as of December 19, 1974, be included in the KCP&L rate base. By order, dated February 12, 1975, in Docket No. 99,486-U, the commission took administrative notice of its action in KCP&L's case and thereupon, likewise, allowed the full KG&E portion of the La Cygne plant into KG&E's rate base effective December 19, 1974. Consequently, the issue became narrowed to the disallowance of one-third of KG&E's portion of the La Cygne plant in rate base for the period of time between implementation of the district court's order and the date the plant was allowed in the rate base for both companies, a time span of approximately two months.

On October 29, 1974, the commission filed its appeal from the original judgment of the district court of Neosho County and raised the following issues in its statement of points:

"1. The District Court of Neosho County, Kansas, committed error in

finding that the disallowance of ⅙ of the Plaintiff's LaCygne Plant from rate base by the State Corporation Commission was arbitrary, unreasonable, and unlawful; the court's action being a misinterpretation of K. S. A. 66-128.

"2. The District Court of Neosho County, Kansas, committed error in determining that the exclusion of ⅙ of the LaCygne Plant from Plaintiff's rate base was not based on substantial and competent evidence, the record having been revealed that the LaCygne Plant was not operating properly and having been so acknowledged by the court.

"3. The District Court of Neosho County, Kansas, committed error in substituting its judgment for that of the State Corporation Commission upon a determination by the court that the evidence disclosed that the LaCygne Plant was not operating properly."

We are first confronted with procedural questions raised by a motion to dismiss filed by KG&E. We have concluded, however, that in view of our disposition of the appeal it is unnecessary to decide or discuss the procedural points raised.

The statutory authority of the commission in its rate fixing function under the Public Utilities Act (K. S. A. and K. S. A. 1975 Supp. 66-101, *et seq.*) and the scope of judicial review of its actions are set forth in detail in the recent case of *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. 604, 538 P. 2d 702 (July 17, 1975). A restatement at this early date would serve no useful purpose. It will suffice to say that in this case we are not confronted with any question pertaining to the scope of judicial review. Neither are we concerned with the application of any particular rate base formula which is usually the question in such cases. It is uncontroverted that the plant was in operation as distinguished from being under construction. The case before us, as we see it, involves only the construction of the pertinent statute with respect to essentially undisputed facts. We are concerned herein only with K. S. A. 66-128, which specifies the property to be included or excluded from the rate base of a utility. The language of 66-128 pertinent to our consideration reads:

"Said commission shall have the power and it shall be its duty to ascertain the reasonable value of all property of any common carrier or public utility governed by the provisions of this act *used or required to be used* in its services to the public within the state of Kansas, whenever it deems the ascertainment of such value necessary in order to enable the commission to fix fair and reasonable rates. . . ." (Emphasis supplied.)

The basic controversy in this appeal involves the interpretation of the foregoing language. KG&E maintains that under the clear wording of the statute the commission has no authority to "split" on a percentage or fractional basis a composite facility, such as the

La Cygne plant; that the duty and authority of the commission is to ascertain the reasonable value of all property of the utility *used or required to be used* by the utility in its services to the public within this state. That is to say, the commission's function is only to determine whether or not property is used or required to be used. If it is used or required to be used the total reasonable value of the property must be included in the rate base or, on the other hand, if the property in question is not found to be used or required to be used, then the total reasonable value thereof must be excluded.

In its brief, the commission admits that the question is unique and requires a new interpretation of 66-128. The commission cites no cases supporting a regulatory agency's authority to "split" on a percentage or fractional bases, a unit or facility of a utility.

We are inclined to agree with the district court's interpretation of the statute. The statute prescribes a two-phase duty of the commission; first, to determine the property of a utility used or required to be used in its services to the public; and, second, to ascertain the reasonable value of such property whenever it deems the ascertainment of such value necessary in order to fix fair and reasonable rates. We discern nothing in the statute which authorizes the commission to determine that a certain facility is partially used or required to be used and partially not. If the legislature had so intended, it would have been a simple matter to include in the statute such words as "or whatever fraction or percentage of such property is used or required to be used." This is not to say that a unit or segment of a facility that has become obsolete or whose production is far in excess of present or near future needs, or for any valid reason, is not used or required to be used and can be setoff or separated from a facility otherwise used, cannot be excluded from rate base under the statute. But that is not the case here. The commission makes no determination that the La Cygne plant or any unit or part thereof is not used or required to be used and there is no evidence to support such a finding. The tenor of the commission's findings is that the plant, due to mechanical problems arising from the antipollution control system, was operating at a low percentage of capacity during the time interval in question and, thus, only two-thirds of the reasonable value thereof should be included in the rate base. There is no evidence or any contention that the capacity of the La Cygne plant was far in excess of the company needs or that it was an imprudent experimental venture. The evidence is to the contrary. The testimony

of KG&E's management, which is undisputed, is to the effect that the need for the plant, its economic feasibility, its geographic location in relation to electric power demands, and fuel supply for the plant, were all studied in depth and carefully planned. In view of the universally recognized decline in the availability of natural gas, the La Cygne plant was designed and located as a "mine mouth" plant in order to take advantage of the nearly inexhaustible supply of soft coal at hand. The evidence discloses that soft coal is much cheaper and the long-range supply much more reliable than in the case of natural gas. Thus, in the long run the use of coal as operating fuel will effect a savings to ratepayers. To be sure the use of soft coal as fuel required substantial expenditures to meet requirements of antipollution control. The commission's findings appear to be based on the premise that, due to operational difficulties with the antipollution control system, the plant was not being fully *used,* rather than on a basis it was *not required to be used.*

In this connection the commission said in finding No. 96:

". . . In other words, at this time under the most favorable conditions otherwise, the LaCygne plant could only operate at slightly over 50% of capacity regardless of its capability otherwise, or the demands for additional generating. With this in mind, perhaps it would be well at this time to allow only 50% of the LaCygne plant in rate base, but we are confident that before too terribly long the capability of the LaCygne plant will increase and will ultimately achieve its full expectations. . . ."

Manifestly the commission found the plant "used or required to be used," because it allowed a major portion into rate base. We believe the legal effect of the commission's action in this regard was perceived by the trial court in its finding No. 9:

"Paragraphs 76-96 of the Commission's Order of March 29, 1974, and in particular paragraph 96, and paragraphs 3 and 4 of the Order of April 24, 1974, denying KG&E's Application for Rehearing, disclose on their face that the decision was arbitrary, and therefore unreasonable. It is evident in the said findings that the Commission arbitrarily allocated only a portion of the LaCygne plant to rate base, having, in effect, found that a portion of the plant was already 'used' and that in the very near future the entire plant would be operational and by virtue of the Commission's recognition for additional capacity, recognized that the plant is 'required to be used.' "

A finding that the La Cygne plant was not capable of operating at full capability is not the equivalent of a finding that it was not required to be used.

Language similar to that employed in K. S. A. 66-128 appears

in the regulatory statutes of numerous jurisdictions. The import generally accorded the pertinent phraseology is succinctly stated in 73 C. J. S., Public Utilities, § 18:

". . . Whether the value of any given property shall be included in the rate base depends on the property being used and useful in supplying the commodity or service that the utility has undertaken to furnish. Accordingly, items of property not used or reasonably necessary to the furnishing of the product or service should not be included in the rate base; and property which is partially or wholly devoted to a private use, as distinguished from the public service, should be excluded from the rate base to the extent of such use.

"On the other hand, property or equipment provided or acquired in anticipation of reasonable future need should be allowed as part of the rate base even though wholly or partially unused at the time to which the inquiry relates. In determining whether excess plant capacity shall be included in the rate base, a utility must have some latitude with respect to plant enlargement undertaken to meet the requirement imposed on it to furnish service when and as demanded by the public, and, while the utility must bear the burden of an unreasonable extension of its plant and the risk that portions of it prudently acquired may become obsolete or not useful, it should not be penalized for failure exactly to anticipate future demands for service in a period of depression." (pp. 1016, 1017.)

One of the questions presented in *Latourneau Et Al v. Citizens Util. Co.*, 125 Vt. 38, 209 A. 2d 307 (Supreme Court of Vermont, 1965) was the inclusion in a utility's rate base, a newly constructed power line used to less than fifty percent of capacity. The Citizens Utilities Company constructed a 115 KV H-Frame line. The Vermont Commission eliminated $239,097 of the costs of the line on the ground that it was being operated at only 48 KV. Evidence at the commission hearing disclosed that full use of the 115 KV capacity on the line would come well within the life of the transmission line. In reversing the commission's order on direct appeal the court said:

"The rule followed by us in dealing with the question of property held for future use 'recognizes that business judgment must be employed to anticipate future needs and that this judgment cannot be arbitrarily interfered with.' The test generally applied is whether the time for using the property in question is so near that it may properly be held to have the quality of working capital. The question is one of fact to be determined by the Commission.

"The Commission treated the 115 KV line as a facility built for future use, and treated it the same as property under construction. But the 115 KV H-Frame line here concerned was fully constructed, and while not used to its full capacity, was in use for the transmission of 48 KV of power. . . ." (p. 44.)

The court goes on to say that the 115 KV line was not property

held only for future use as were the properties involved in several prior cases which are cited.

In the instant case, the commission made no finding that the La Cygne plant was property held only for future use, but to the contrary found that it was in use and observed that before long its capacity would increase and ultimately achieve its full expectations.

In *Chambersburg Gas Co. et al. v. P. S. C.*, 116 Pa. Superior Ct., 196, 176 A. 794, the Pennsylvania Public Service Commission, in considering a rate filing by Chambersburg, excluded a large masonry oil storage tank from rate base on the ground that it was not being used at the time investigations were made. On appeal the court reversed and had this to say:

". . . We cannot exclude an item as not used and useful merely because the use of the instrument might be dispensed with for the time being . . . It is our duty to give consideration to the apparent good faith of the officers of the company in their determination that there was a reasonable requirement for its use. We are unable to discover any evidence that would warrant us in excluding this masonry tank, and there is not any evidence sufficient to overcome the facts and figures furnished by the company to sustain its valuation." (pp. 206, 207.)

The commission made no finding to the effect that there was no reasonable requirement for the full use of the La Cygne plant. Neither was there any finding of lack of good faith on the part of management of the KG&E. The nearest approach to a finding that use of the La Cygne plant was not required appears in finding No. 87, wherein the commission stated:

"Nor does it appear that the generation from the LaCygne plant will be absolutely necessary for the applicant to achieve its system load in the near future. . . ."

When finding No. 87 is read together with finding No. 88, we cannot give it the import that La Cygne, or even a portion thereof, was not required to be used, nor do we believe the commission intended that effect. Finding No. 88 reads:

"Unquestionably, electric utilities must plan for the future. To construct generating plants only when the need arises is, of course, ridiculous, and to construct it only for those needs without anticipating future growth would be even more ridiculous. If such were the case, electric utilities would always be operating behind their current load requirements instead of ahead. Add to this the current problems of fuel for generation, and we must also acknowledge the need for innovation and to encourage a search for alternate methods of generation—as in this case construction of a coal-fired plant, recognizing the declining of availability of natural gas."

We agree with the reasoning expressed by the commission in finding No. 89. It reads:

"At the same time, regulatory agencies cannot grant carte blanche authority to construct huge plants just barely more than experimental in nature, and allow the company to charge the expense entirely to the rate payer—at least not until it works to a substantial benefit to the ratepayer or is within reasonable limits of anticipation of benefit."

This expression of the commission is supported by the decision in *Public Service Com'n v. Montana-Dakota Utilities Co.*, (N. D.) 100 N. W. 2d 140, wherein a utility, anticipating a possible extension of its service area in the future, constructed a gas pipe line far in excess of the needs of present customers. The court said:

". . . It may be a prudent investment to provide for possible future growth by expansion into other and new communities to the east at some future date providing sufficient gas is made available. The anticipated patrons of the company under the present proposal cannot be burdened in order to provide for possible needs of other patrons in other communities some time in the future. We feel the Commission was right in its determination and the Court in error in reversing it. 43 Am. Jur. Public Utilities, and Service, Section 106, p. 647." (p. 150.)

However, as we have previously observed there is no finding here that the La Cygne plant was constructed far in excess of present needs, nor is there any evidence to that effect.

District court review of an order of the commission is limited, under the provisions of K. S. A. 66-118d, to determine whether the order is lawful and reasonable. An order is lawful if the prescribed statutory and procedural rules are followed in making the order. (*Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, supra; and *Southern Kansas State Lines Co. v. Public Service Comm.*, 135 Kan. 657, 11 P. 2d 985.)

Whether utility property is used or required to be used is a question of fact to be determined by the commission, but in making an order based upon such determination the statutory rule must be followed. The statutory provision is clearly stated—if the property in question is either used or required to be used it must be included in rate base. The commission made no specific finding that the La Cygne plant was not required to be used, but, on the other hand, did find significant use thereof. In the light of such findings the commission's order is unlawful under the clear import of K. S. A. 66-128. The district court properly construed the statute and its judgment must be affirmed.

It is so ordered.