(600 P.2d 794)

No. 50,718

SUNFLOWER PIPELINE COMPANY, *Applicant/Appellant,* v. KANSAS
CORPORATION COMMISSION, *Respondent/Appellee.*

Opinion filed October 5, 1979.

*Robert J. O'Connor* and *Richard Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, for the applicant/appellant.

*Donald A. Low,* assistant general counsel of the Kansas Corporation Commission, for the respondent/appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an application pursuant to K.S.A. 1978 Supp. 66-118a for review of a decision of the Kansas Corporation Commission. The review arises as a result of a delay between the decision of the KCC authorizing the rate increase and a subsequent, related order establishing the effective date of the authorized increase.

The applicant, Sunflower Pipeline Company, sells irrigation gas to approximately thirty-five farmers in Finney and Scott Counties. The KCC's approved rate for that service for the period from mid-1976 to the date of this application was 25¢ per Mcf. At the time Sunflower filed its application for a rate increase with the KCC (August 8, 1977, Docket No. 112,318-U), Sunflower's cost for the gas was 54.59¢ per Mcf. On August 25, 1978, the KCC issued an order granting an increase in rates to 76.26¢ per Mcf. On September 5, 1978, Sunflower filed with the KCC its proposed schedules of tariffs which, among other items, set forth the newly increased rate of 76.26¢ per Mcf. The KCC staff recommended several revisions in the proposed tariff schedules in a letter to Sunflower. Sunflower implemented most of the suggested modifications and resolved the others by agreement with the staff, without requesting further hearing.

Revised tariffs were ultimately filed by Sunflower on September 20, 1978, and received KCC approval as to form and content on October 13, 1978. Sunflower was also notified that the rate increase granted on August 25, 1978, would become effective for billings after November 1, 1978. Sunflower received notification of this order by administrative letter dated October 19, 1978, and applied for a rehearing, which was denied after oral argument before the KCC.

Sunflower asserts (1) the rate increase approved by the KCC became effective as of the date of filing of the August 25 order since the order was silent as to the effective date of the rate increase; and (2) the October 13, 1978, order was void because the KCC failed to state findings and conclusions as required by law and the rules and regulations of the KCC.

The recent case of *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 595 P.2d 735, *rev. denied* 226 Kan. ____ (September 11, 1979), thoroughly outlines the scope of judicial review in such matters:

"K.S.A. 1978 Supp. 66-118d limits judicial review of an order by the commission to determining whether the order is 'lawful' or 'reasonable.' *Kansas Gas & Electric Co. v. State Corporation Commission,* 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, 396-7, 565 P.2d 597 (1977). An order is 'lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered 'reasonable' if it is based on substantial competent evidence. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, Syl. ¶ 2.

"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 48-9, 386 P.2d 515 (1963)." 3 Kan. App. 2d at 380-381.

By legislative grant the KCC is given full power, authority and jurisdiction to supervise and control public utilities, and is empowered to do all things necessary and convenient for the exercise of such power and authority. K.S.A. 66-101. The KCC is vested with the authority to regulate affected utilities to insure reasonable rates and services to the public and to adopt reasonable and proper rules and regulations to govern its proceedings. Further, controlled utilities must publish and file with the KCC copies of all their schedules of rates, charges and classifications. K.S.A. 1978 Supp. 66-117. The KCC has the authority to prescribe reasonable rules and regulations regarding the printing and filing of all schedules, tariffs and classifications of all rates, tolls, fares, charges and all rules and regulations of such public utilities. K.S.A. 66-106 through 66-108.

It is not disputed that the procedures followed by the parties, at least until the August 25 order was entered, were in accord with

Chapter 66 of Kansas Statutes Annotated. The basic question before this court is whether the October 13, 1978, order making the effective date of the previously authorized rate increase November 1, 1978, was reasonable and lawful. Both parties agree that the order of August 25, 1978, did not contain an express provision regarding its effective date. Although the rate schedules in the tariffs submitted to the KCC by Sunflower on September 5, 1978, did state the correct rate increase to 76.26¢ per Mcf, other rate charges, not requested by Sunflower or considered or authorized by the KCC, were also included in the tariffs. The tariffs as submitted could have produced revenue greater than that authorized by the August 25, 1978 order.

We first consider the contention of Sunflower that the challenged order was void because it lacked sufficient findings and conclusions to justify the delayed effective date of the increase.

Under Chapter 66, the KCC possesses the authority to establish reasonable rates for utilities and to require the filing of tariffs. Implicit within this power must be the authority to set the effective date of authorized rate increases. It is conceded that neither K.S.A. 66-101 *et seq.* nor the KCC's administrative regulations specify explicit procedures for the approval of tariffs by the KCC. However, it is reasonable that along with the authority to grant rate increases goes the power to approve the correctness of the tariffs proposed by the utilities to carry out the orders of the KCC. As a result, a rate increase authorized by the KCC will not be effective until the proposed tariffs have been both filed with and approved by the KCC.

In this case the rate increase was authorized in the August 25, 1978, order, but did not set forth a date for filing of the schedules of rates and tariffs, nor the effective date of the increase. In essence, this order allowed the utility to file tariffs properly comporting with the provisions of the order. The effective date of any such increase must be subsequent to KCC approval of tariffs as filed. Kansas law does not provide nor permit the KCC to grant retroactive rate increases in these cases.

Tariff approval is a concomitant part of a rate increase procedure. Since the tariffs must reflect the provisions of any order authorizing the increase, we must review the original order granting the increase to determine whether adequate findings of fact and conclusions of law were made, rather than the order

which approved the revised tariffs. All necessary evidence was presented by the interested parties prior to the order of August 25, 1978. We find that order does contain the necessary and essential findings to support the action of the KCC delaying implementation of the increase, when considered in light of the failure of the utility to file appropriate tariffs.

We next consider whether the KCC could properly delay implementation of the rate increase until Sunflower's tariffs received KCC approval. The KCC at its hearing on the requested rate increase considered evidence concerning the cost to Sunflower of the gas it purchased for subsequent sale to its customers. It was upon this limited ground that Sunflower's prayer for relief was granted and the specific rate as set forth in the KCC's order was 76.26¢ per Mcf. Under K.S.A. 1978 Supp. 66-117, Sunflower needed only to file the new schedules of tariffs so authorized by the KCC. Such new tariffs were filed. However, in addition to the rate increase authorized, Sunflower included additional provisions such as minimum and maximum rate charges which were never authorized by the KCC. The filing of tariffs not in compliance with the KCC's order was improper and makes such filing a nullity. The new tariffs when considered in toto were neither requested by Sunflower, considered by the KCC, nor justified through evidence presented during the hearing. Finally, if the initial tariffs had been approved, it could have resulted in rates charged to the public which would have produced a greater return to Sunflower than had been authorized.

Sunflower does not dispute this point. It argues, however, that since none of its billings made after the August order charged any of the disapproved rates provided for in their initial tariffs, the refusal of approval of the tariffs as filed was unreasonable. A sixty-seven day period of time elapsed from the KCC's August 25 order granting the increase in revenue and the final approval of the amended tariffs resulting in the November 1, 1978, effective date. However, when the appropriate sections of the statutes are considered in pari materia, it is clear that the procedure for procuring a rate increase includes several steps which must be followed before the new rate may be placed into effect.

The scheduled change in rates to be filed in a tariff must comport with the order of the KCC granting the increase in revenue to a utility and must be approved by the KCC. Only then

may the new rates be used to collect the increased revenues authorized by the KCC. Therefore, we find that the KCC's order of August 25, 1978, did not cause the increased rate to become effective as of that date. Rather, it was incumbent upon Sunflower to prepare and file tariffs that would comport with the increase as ordered. As Sunflower failed to do so, the action of the KCC in refusing to approve the rates was not unreasonable.

We therefore find that the decision of October 13, 1978, setting the effective date of the rate increase was lawful because the KCC followed the prescribed statutory and procedural rules in determining the date. We further find that the order was reasonable as there is substantial competent evidence to support it.

Judgment is affirmed.