(663 P.2d 304)

No. 55,074

UNION GAS SYSTEM, INC., *Applicant,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Respondent.*

Opinion filed May 12, 1983.

*Bob W. Storey,* of Topeka, and *William H. Reeder,* of Independence, for the applicant.

*LuAnn C. Dixon,* assistant general counsel, and *Brian J. Moline,* general counsel, for the respondent.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by Union Gas System, Inc. (Union) from a final order of the Kansas Corporation Commission (Commission), wherein the Commission denied in part Union's request for increase in its natural gas rates.

Union's rate increase application proceeded in the usual fashion, with the expert witness testimony being prefiled and each party to the action being given the opportunity to cross-examine and conduct redirect examination of the various witnesses.

Union cited several factors as rationale for the requested increase of revenues in the amount of $756,409. These factors included the rising costs of: (1) employee benefits, salaries and wages; (2) materials and supplies; (3) ad valorem and payroll taxes; (4) debt service requirements; and (5) sustaining dividends at levels sufficient to keep pace with inflation and to allow Union adequate internal cash for reinvestment in its distribution system.

By a Commission rate order issued in June 1981, in docket No.

126,132-U, Union was authorized an 11.92% overall rate of return, which included a 14.22% rate of return on equity. Union's present rate request would result in an overall rate of return of 12.92% and a rate of return on equity of 16.6%.

Both Union and the Commission staff presented expert testimony concerning Union's required rate of return on equity. Although the testimony was prefiled, each party was given the opportunity to cross-examine these witnesses. Neither the staff attorney, nor Union's attorney nor the individual commissioners took this opportunity to question the validity of the expert testimony. This testimony, if taken at face value, would without question necessitate an increase in Union's rate of return on equity, because both witnesses' recommendations were several percentage points higher than that set by the June 1981, rate order of the Commission. In its order denying in part Union's request for a rate increase based on a proposed increase in its return on equity, the Commission rejected both the testimony of Union's expert and the testimony of the Commission's own staff expert. The Commission explained its rejection of the evidence as follows:

"The Commission has examined Mr. Hubbell's and staff witness Reed's testimony and is not persuaded that their analyses determine the appropriate cost of equity for Union Gas at this time. Specifically, the Commission is not persuaded that the economic conditions in which Union Gas has been operating since the last rate case are as bleak as those painted by Mr. Hubbell. He testified that investors and the investment community expect that inflation will continue near the double digit rate in the next few years. (Hubbell, Tr. 49). Yet for the year May, 1981 through April, 1982, the consumer price index rose only 6.3 percent (Business Week, June 14, 1982). And for the past year or two, inflation has been less than the double digit figures initially anticipated.

"Furthermore, Mr. Hubbell testified that Union Gas common stockholders face higher financial risk than investors in comparable companies because Union Gas has a higher equity ratio than those other companies. (Hubbell, Tr. 56). The opposite is true: the higher the equity ratio, the lower the company's financial risk.

"The applicability of Mr. Hubbell's comparative analysis results to Union Gas depends on the comparability of the chosen companies, and the validity of his DCF analysis of each. The Commission has examined Mr. Hubbell's criteria for choosing comparable companies and does not find that he adequately demonstrated the appropriateness of his choices. He did not explain the diverse characteristics of the chosen companies.

"The Commission has also examined the computational formulas he used for his DCF analysis of each of the comparable companies. To compute the projected dividend yield, he considered only historical data, specifically the divi-

dend yield for January through September, 1981. The DCF analysis calls for a *projected* or *expected* dividend yield rather than a *realized* or *historical* dividend yield. To compute projected growth in dividends, Mr. Hubbell multiplied the average retained ratio for the period 1978 through 1980 by the actual return on book value for 1979 through 1981. This inconsistency leads the Commission to question the results of his analysis.

"As Mr. Hubbell admitted in his testimony, both his comparable earnings analysis and his DCF analysis have been tempered by judgment. While this may be an integral part of any such analyses the Commission is not persuaded of the correctness of his analyses after examining his particular methodologies.

"Staff witness Reed's determination of the cost of equity based on firms he found to be comparable to Union Gas Natural Gas Division is not acceptable in this case. He has not sufficiently demonstrated that the characteristics of the sample companies make an accurate comparison possible. The surrogate firms obtain more than 90 percent of their revenues from natural gas distribution; there is no explanation of the non-regulated businesses from which the surrogates obtain the remainder of their revenues. Union Gas is a closely held corporation; there is no discussion of whether the surrogate firms are openly traded or closely held. Nor did staff witness consider customer mix of the surrogate firms. The Commission does not find adequate information in the record to insure comparability. Because we question the representativeness of the surrogate firms, we are not inclined to accept the results of staff's application of the DCF model for each of these firms as representative of Union Gas Natural Gas Division's cost of equity.

"Applicant cites declining sales as a reason for this rate increase request. The Commission is not required to insure or guarantee a utility a certain rate of return to offset declining sales. The regulated utility has a responsibility to try to reduce its costs and offset declining sales by marketing the available gas to new customers. By recognizing declining sales in this docket, the Commission has reduced the business risk of Union.

"The Commission is not convinced that the general economic climate or the financial condition of Union Gas System, Inc. warrants a return on equity as high as that recommended by either Applicant or staff. The high equity ratio of the company (52.6%) and the diversity of the company's operation as analyzed by management in the 1981 Annual Report (Exhibit No. 1, Section M, Annual Report, p. 5) indicate improvement rather than a worsening of financial condition since the 1981 rate case. The evidence in the record does not establish a need for a higher authorized rate of return than determined in the 1981 rate case. Therefore, we find that Union Gas System, Inc. should receive no change in its 1981 authorized rate of return of 11.92 percent. This computes from a 14.4 percent return on equity using the capital structure submitted by staff in this case. The Commission finds that the 11.92 percent overall rate of return will enable Union Gas System, Inc. to attract capital and remain financially sound."

The question presented here on appeal is narrow in scope. Was such refusal by the Commission to give credence to the expert testimony concerning the rate of return unlawful or unreasonable? In *Ash Grove Cement Co. v. Kansas Corporation*

*Commission,* 8 Kan. App. 2d 128, 130, 650 P.2d 747 (1982), we recently reviewed the law governing the applicable scope of appellate review in this case:

"The appellate scope of review of orders or decisions of the Commission is limited to a determination of whether such orders or decisions are lawful and reasonable. See, *e.g., Kansas Gas & Electric Co. v. State Corporation Commission,* 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). The court elaborated on this standard of review in *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979) (hereinafter "Midwest I"):

" 'A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, 396-7, 565 P.2d 597 (1977). An order is "lawful" if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered "reasonable" if it is based on substantial competent evidence. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, Syl. ¶ 2.

" 'The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 48-9, 386 P.2d 515 (1963). Hence a court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it. *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 217 Kan. 604, 617, 538 P.2d 702 (1975); *Graves Truck Line Inc. v. State Corporation Commission,* 215 Kan. 565, Syl. ¶ 5, 527 P.2d 1065 (1974.)' "

A careful review of the record on appeal reveals that the Commission's rejection of the expert testimony on the return on equity question was lawful. The Commission properly followed the prescribed statutory and procedural rules in making the order.

Our review of the record also leads us to conclude that the Commission's rejection of the expert testimony was reasonable. It has been held that the Commission has the discretion to weigh

and accept or reject testimony presented to it. *Ash Grove,* 8 Kan. App. 2d at 131; *Kansas-Nebraska Natural Gas Co. v. Kansas Corporation Commission,* 4 Kan. App. 2d 674, 676, 610 P.2d 121, *rev. denied* 228 Kan. 806 (1980). We do note, however, that in both *Ash Grove* and *Kansas-Nebraska* the Commission rejected only the expert testimony provided by the applicant. In the present case, testimony advanced by the Commission's staff was rejected as well. We find that the same reasoning which permits the Commission to reject testimony provided by an applicant, or even a concerned third party, would support the Commission's right to reject, with good cause, the expert testimony provided by the Commission's own staff. We therefore hold that the Commission has the discretion to weigh and accept or reject testimony presented to it by any party, including testimony presented by the Commission's own staff. Upon reviewing the record, we cannot say that the Commission arbitrarily rejected the testimony of the two experts. As was set out above, the Commission's order outlines the specific reasons it questioned the validity of the experts' recommendations. While some of the stated reasons appear to be conclusional, others point to specific flaws in the experts' analyses which provide an adequate basis for rejecting the ultimate conclusions. Some may question the validity of the Commission's stated reasons for rejecting the expert testimony.

"The Commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into rate making. It is equipped with a staff of assistants, with experience as statisticians, accountants and engineers. The courts have no comparable suitability for making the determination." *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 48-49, 386 P.2d 515 (1963).

Upon receipt of the Commission's order and after being apprised of the alleged defectiveness of the expert testimony concerning the rate of return analyses, Union filed an application for rehearing with the Commission. At the hearing on that application, Union completely neglected the opportunity to clarify any of the Commission's questions concerning the expert testimony which were raised in the Commission's order. Union failed to proffer additional testimony going to the rate of return issue, and further failed to ask for a continuance to enable it to obtain additional expert testimony. It appears that Union had nothing

further to offer by way of explanation. We therefore find that the order of the Commission as entered was lawful and reasonable.

We would note, however, that a more efficient practice in the future would be for the Commission to raise its major objections to the expert testimony at the time of the hearing so that the expert could perhaps answer some of the Commission's questions regarding methodology and provide additional information as needed to prevent the wholesale rejection of that expert's testimony.

Having reasonably rejected all testimony concerning rate of return in the present case, the Commission was presented with no substantial competent evidence which indicated that the rate of return set in the June 1981, rate order was no longer reasonable. Therefore, the Commission properly denied that portion of Union's rate increase application.

Affirmed.