234 Kan. 983 (1984)
677 P.2d 982
OILFIELD FLUID MOTOR CARRIERS, (Participants in K.M.C.A. Tariff 90-E, KCC No. 80) Appellees/Cross-Appellants,
v.
THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, R.C. LOUX, Chairman, JANE T. ROY, and PHILLIP R. DICK, Commissioners and their respective successors in office as members of the STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, Appellants/Cross-Appellees.
No. 55,691
Supreme Court of Kansas.
Opinion filed February 18, 1984.
Robert M. Fillmore, special assistant attorney general and assistant general counsel for KCC, argued the cause, and Brian J. Moline, general counsel for KCC, was with him on the briefs for appellants/cross-appellees.
William L. Mitchell, of Mitchell and Henry, of Hutchinson, argued the cause and was on the brief for appellees/cross-appellants.
John E. Jandera, of Jandera, Gregg & Barker, of Topeka, argued the cause and was on the brief for intervenors Holton Transport, Inc., Capitol City Moving and Storage, Inc., Darnall Truck Service, Inc., Cyrus Truck Line, Inc., Prouty Truck Line, Inc., and Hofer, Inc.
The opinion of the court was delivered by
HOLMES, J.:
The State Corporation Commission of Kansas (KCC) appeals from a district court judgment invalidating a 3% rate increase order issued by the KCC and granting an 18% rate increase as sought by the plaintiffs. The plaintiffs have cross-appealed from the district court's findings that the order of the KCC was timely issued and that the 3% rate granted by the KCC was reasonable and supported by substantial competent evidence. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).
The plaintiffs are intrastate motor carriers, parties to Kansas Motor Carriers Association Tariff No. 90-E, KCC No. 80, involved in the transportation of crude oil, fresh water and salt water needed for oil and gas operations. On January 27, 1982, the motor carriers filed an application and suggested tariffs with the KCC seeking an 18% increase in rates. Hearings were held in the spring and on September 21, 1982, the KCC issued its order granting a 3% increase. The motor carriers filed a motion for rehearing September 30, 1982, which was denied on November 1, 1982. The September 21, 1982, order of the KCC provided in part:
"The Commission further finds that the Applicants shall be allowed to publish the new rates on one day's notice. The Commission additionally orders that these rates be published as maximum rates, that is, the published tariff shall be the maximum charge allowed, and the individual carrier, at his option, shall be allowed to charge less than the maximum rate without being required to file a new tariff with the Commission.

....
"Applicants shall file a new tariff, reflecting the 3% increase.... This *985 tariff shall state on its face that it is a maximum tariff, and shall also state that while the participants in the tariff may charge below the maximum rate, they shall not charge above the maximum rate." (Emphasis added.)
On November 29, 1982, the motor carriers filed in Butler County District Court an application for judicial review of the KCC orders. Plaintiffs challenged the agency action on three grounds: First, there was no final order within 240 days of the original application as required by K.S.A. 66-117(b); second, the orders were unlawful, unreasonable, arbitrary, and not supported by any evidence; and finally, permitting carriers to charge less than the maximum rate increase without filing a new tariff violated K.S.A. 66-108 and 66-109. For these reasons plaintiffs claimed the agency decisions were void, and the proposed increase of 18% should be deemed approved and effective under K.S.A. 66-117(b). Following oral arguments, heard on March 10, 1983, the trial court in a memorandum opinion issued March 25, 1983, found that the KCC's September 21, 1982, order was a final order and within the 240-day limitation of K.S.A. 66-117(b). On the second question, the court found that the KCC's 3% rate increase was supported by substantial competent evidence, in that the agency had considered all of the evidence before it and arrived at a reasonable rate from the evidence.
However, the court found for plaintiffs on the final issue, the legality of permitting motor carriers to charge less than the maximum approved rate without filing such lesser rates with the KCC. The trial judge stated:
"I have no argument with K.S.A. 66-1,112 which says in substance that the Commission is vested with the power and authority to fix and approve maximum or minimum or maximum and minimum rates.... Here, [however,] I feel, the Commission went one step beyond the limitation placed upon it by the legislature when it allowed `the individual carrier, at his option, shall be allowed to charge less than the maximum rates without being required to file a new tariff with the Commission.' The charging of unpublished, secret rates is in violation of the legislative mandate in K.S.A. 66-108, 109, and 117, and also in K.S.A. 66-1,112 which requires approval by the Commission of any changed rates. I do not feel that a member of the shipping public could determine whether a carrier is offering a discriminatory or unduly preferential rate to another shipper if the rate is not published and remains a secret. I am therefore finding the Order dated September 21, 1982, is unlawful and void."
In an order entered May 5, 1983, the trial court denied a motion by the KCC for clarification of the court's prior order and further found and ordered:

*986 "3. That there is no reason why the Petitioners cannot charge the increase of 18% which they sought in their Application of January 27, 1982, pursuant to the suggested tariffs filed therewith."
The KCC now appeals from that portion of the trial court's judgment declaring the agency order unlawful and implementing the 18% rate increase. The motor carriers cross-appeal from that portion of the judgment finding the KCC action to be timely within the 240-day limitation of K.S.A. 66-117(b), and the 3% rate increase reasonable as based upon substantial competent evidence.
The rules governing judicial review of an order of the KCC were set out by the Court of Appeals in Midwest Gas Users Ass'n v. Kansas Corporation Commission, 3 Kan. App.2d 376, 595 P.2d 735, rev. denied 226 Kan. 792 (1979), wherein the court stated:
"K.S.A. 1978 Supp. 66-118d limits judicial review of an order by the commission to determining whether the order is `lawful' or `reasonable.' Kansas Gas & Electric Co. v. State Corporation Commission, 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. Jones v. Kansas Gas and Electric Co., 222 Kan. 390, 396-7, 565 P.2d 597 (1977). An order is `lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. Central Kansas Power Co. v. State Corporation Commission, 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered `reasonable' if it is based on substantial competent evidence. Jones v. Kansas Gas and Electric Co., 222 Kan. 390, Syl. ¶ 2.
"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. Central Kansas Power Co. v. State Corporation Commission, 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. Central Kansas Power Co. v. State Corporation Commission, 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. Southwestern Bell Tel. Co. v. State Corporation Commission, 192 Kan. 39, 48-9, 386 P.2d 515 (1963)." 3 Kan. App.2d at 380-81.
Furthermore, for the purpose of determining whether a district court has observed the requirements and restrictions placed upon it, an appellate court will make the same review of the administrative tribunal's action as does the district court. Kelly v. *987 Kansas City, Kansas Community College, 231 Kan. 751, 754, 648 P.2d 225 (1982).
As the first issue on appeal we will consider the cross-appellants' contention that the original order of the KCC was not timely issued. K.S.A. 66-117(b) provides in part:
"Whenever any common carrier ... files with the state corporation commission a schedule showing the changes desired to be made and put in force by such .. . common carrier, the commission either upon complaint or upon its own motion, may give notice and hold a hearing upon such proposed changes.... The commission shall not delay the effective date of the proposed change in rate ... more than two hundred forty (240) days beyond the date the ... common carrier filed its application requesting the proposed change.... If the commission has not issued a final order on the proposed change in any rate ... within two hundred forty (240) days after the carrier... files its application requesting the proposed change, then the schedule shall be deemed approved by the commission and the proposed change shall be effective immediately, except that ... (2) if hearings are in process before the commission on a proposed change requested by the ... common carrier on the last day of such two hundred forty day (240) period, such period shall be extended to the end of such hearings plus twenty (20) days to allow the commission to prepare and issue its final order."
The September 21, 1982, order of the KCC granting the 3% increase in rates was issued on the 237th day after the filing of the application by the motor carriers.
We have not previously considered the question of precisely what action on the part of the KCC qualifies as a "final order" within the dictates of K.S.A. 66-117(b). The essence of the motor carriers' argument is that the statute can only be satisfied by KCC action upon, approval and implementation of an authorized rate by the end of the 240th day after an application is filed or the order is not timely and the requested rate, in this case an 18% increase, is automatically effective. It is the position of the KCC that a "final order" for purposes of the statute is one disposing of the issues raised by the initial rate application rather than one issued in response to an application for rehearing.
The motor carriers point to the decision in Sunflower Pipeline Co. v. Kansas Corporation Commission, 3 Kan. App.2d 683, 600 P.2d 794 (1979), for the principle that a new rate increase granted by the KCC becomes effective only after appropriate tariffs are formulated, filed with, and approved by the KCC. Plaintiffs assert that by implication under K.S.A. 66-117(b), all of these steps must be completed within the 240-day period to avoid automatic implementation of the proposed rate change initially *988 requested by a common carrier. Plaintiffs have ignored the proviso of 66-117(b) to the effect that if the hearings on the application have not been completed and are still in process on the 240th day, then the period shall be extended to the end of such hearings plus an additional 20 days for the KCC to prepare and file its final order. Obviously, the final order contemplated by the statute is the initial order on the original application and not an order issued after a rehearing and the other filings that are necessary for the rate change to become effective. We hold that the final order contemplated by 66-117(b) is the order on the petitioner's application and not subsequent orders issued as a result of a rehearing or other proceedings. As the order of the KCC granting the 3% increase was issued within the 240-day period, it was timely under the statute. The trial court was correct in so finding.
The next issue raised by the motor carriers is their contention that the KCC order is unreasonable and unlawful because it is not supported by any competent evidence and because the KCC did not make sufficient findings of fact to support its order. The principal contention is that as the KCC did not present any testimony it should have accepted the testimony of the petitioners' expert, Bruce Myers, C.P.A., as being true and conclusive. The KCC in its order went into considerable detail to point out the areas of the testimony which the commissioners found to be lacking. Suffice it to say the KCC discovered a number of problems with the data underlying the testimony, which was based upon a revenue/expense analysis of sixteen of the motor carriers. The problem areas included inadequate records; reliance on estimates of the carriers' costs rather than actual figures; lack of independent verification of amounts; the use of projected cost increases without considering subsequent mitigating trends; the use of replacement costs to estimate future expenses, based on the assumption the carriers were actually going to replace their equipment; and reliance on frequently incomplete balance sheets submitted by the carriers. For these reasons the KCC rejected some of the underlying data, disregarded some of Myers' figures, and adjusted others. The KCC relies upon Union Gas System, Inc. v. Kansas Corporation Commission, 8 Kan. App.2d 583, 663 P.2d 304, rev. denied 233 Kan. 1093 (1983), for authority that it may reject expert testimony even if uncontroverted. In that case the court stated:

*989 "Our review of the record also leads us to conclude that the Commission's rejection of the expert testimony was reasonable. It has been held that the Commission has the discretion to weigh and accept or reject testimony presented to it. Ash Grove, 8 Kan. App.2d at 131 [Ash Grove Cement Co. v. Kansas Corporation Commission, 8 Kan. App.2d 128, 650 P.2d 747 (1982)]; Kansas-Nebraska Natural Gas Co. v. Kansas Corporation Commission, 4 Kan. App.2d 674, 676, 610 P.2d 121, rev. denied 228 Kan. 806 (1980). We do note, however, that in both Ash Grove and Kansas-Nebraska the Commission rejected only the expert testimony provided by the applicant. In the present case, testimony advanced by the Commission's staff was rejected as well. We find that the same reasoning which permits the Commission to reject testimony provided by an applicant, or even a concerned third party, would support the Commission's right to reject, with good cause, the expert testimony provided by the Commission's own staff. We therefore hold that the Commission has the discretion to weigh and accept or reject testimony presented to it by any party, including testimony presented by the Commission's own staff. Upon reviewing the record, we cannot say that the Commission arbitrarily rejected the testimony of the two experts. As was set out above, the Commission's order outlines the specific reasons it questioned the validity of the experts' recommendations. While some of the stated reasons appear to be conclusional, others point to specific flaws in the experts' analyses which provide an adequate basis for rejecting the ultimate conclusions." pp. 586-87.
In considering its scope of review the court in Midwest Gas Users Ass'n v. Kansas Corporation Commission, 3 Kan. App.2d at 381, stated:
"[A] court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it. [Citations omitted.]"
The trial court found the KCC order to be supported by substantial competent evidence and we agree.
The next issue on appeal is the validity of the KCC action in establishing the 3% increase as a maximum rate to be charged by the motor carriers and authorizing individual carriers to charge less than the maximum rate without filing such lower rates with the KCC. The motor carriers contend that throughout the history of KCC rate regulation it has always been the practice for the commission to establish fixed rates rather than a range or a ceiling. K.S.A. 1983 Supp. 66-1,112 provides in part:
"(a) The commission is hereby vested with power and authority and it shall be its duty to ... fix and approve reasonable maximum or minimum, or maximum and minimum rates, fares, charges, classifications ...." *990 Regardless of past practice by the KCC the statute is clear that it is authorized to establish a maximum rate. It is equally clear that if a rate is established as a maximum rate those subject to it may charge rates less than the maximum. Any other construction would fly in the face of clear statutory language which needs no explanation. Again the trial court correctly interpreted the statute.
The contention that the KCC exceeded its authority in allowing motor carriers to charge less than the maximum "without being required to file a new tariff with the Commission" has merit. It is the position of the motor carriers that such a provision violates the clear mandates of K.S.A. 66-108 and 66-109. Those statutes provide in pertinent part:
66-108. "Every ... common carrier doing business in Kansas, over which the state corporation commission has control, shall publish and file with the corporation commission copies of all schedules of rates, joint rates, tolls, fares, charges, classifications and divisions of rates affecting Kansas traffic, either state or interstate.... The corporation commission shall have power to prescribe reasonable rules and regulations regarding the printing and filing of all schedules, tariffs, and classifications of all rates ... of such ... common carriers."
66-109. "No common carrier ... governed by the provisions of this act shall, knowingly or willfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, or for any service in connection therewith, than is specified in the printed schedules or classifications, ... or demand, collect or receive any rate, ... not specified in such schedule or classification...."
The KCC relies upon K.S.A. 66-117(a) which states in part:
"(a) Unless the state corporation commission otherwise orders, no common carrier ... shall make effective any changed rate ... or classification or schedule of charges ... except by filing the same with the commission at least thirty (30) days prior to the proposed effective date thereof. The commission, for good cause, may allow such changed rate ... to become effective on less than thirty (30) days notice. Any such proposed change shall be shown by filing with the state corporation commission a schedule showing the changes, and such changes shall be plainly indicated by proper reference marks in amendments or supplements to existing tariffs, schedules or classifications, or in new issues thereof"
for the argument that the KCC may make effective a change in rates without either publication or filing. We do not agree. The clause "[u]nless the state corporation commission otherwise orders" would appear to grant the KCC authority to authorize less than 30 days for the implementation of the rate change if it is *991 approved by the KCC. It does not contain any provision which would eliminate the filing requirements of 66-108. The trial court, in addressing this issue, stated:
"Here, I feel, the Commission went one step beyond the limitation placed upon it by the legislature when it allowed `the individual carrier, at his option, shall be allowed to charge less than the maximum rate without being required to file a new tariff with the Commission.' The charging of unpublished, secret rates is in violation of the legislative mandate in K.S.A. 66-108, 109 and 117, and also in K.S.A. 66-1,112 which requires approval by the Commission of any changed rates. I do not feel that a member of the shipping public could determine whether a carrier is offering a discriminatory or unduly preferential rate to another shipper if the rate is not published and remains a secret."
We concur that there are sound and compelling reasons behind the statutory requirement of a filing of all schedules of rates and changes therein. While under the KCC order for a maximum rate anything less than the maximum would presumably be valid, nevertheless any variation from the 3% allowed by the KCC still requires at least filing with the KCC so the information is available to the public. A liberal construction of the act as required by K.S.A. 66-141 and the rule-making authority granted the KCC are not sufficient to warrant a departure from clear statutory requirements established by the legislature. We hold that if the motor carriers intend to charge rates under the maximum authorized by the KCC order then such rates must be filed with the KCC and published as ordered by the KCC or as mandated by the statutes.
Finally we are faced with the ultimate disposition of this case as made by the trial court. The trial court found the KCC order void due to the lack of a filing provision and authorized the implementation of an 18% increase in rates as originally requested by the carriers. In this we think the court erred. Provisions for review of orders of the KCC are set forth in K.S.A. 66-118a et seq. 66-118d provides in part:
"Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable....
"... No court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided." (Emphasis added.)
66-118k provides:

*992 "If the court shall find that the order or decision of the state corporation commission is unlawful or unreasonable in whole or in part and shall vacate or set aside the order or decision in whole or in part, the court shall make findings of fact and conclusions of law, and upon final judgment the clerk of the court shall transmit to the state corporation commission three certified copies of the judgment of the court and the findings of fact and conclusions of law. Thereupon, if any charge, classification or practices contained in the order appealed from shall be set aside in whole or in part by the court, it shall be the duty of the public utility, common carrier or petitioner affected by the judgment of the court, to initiate and file a new rate, fare, toll, rental, charge or classification, and the commission may investigate and approve or set aside such proposed rate, charge, fare, toll, rental or classification under the provisions of the law applying to the state corporation commission."
When the provisions of all of the statutes are read together it appears that the extent of the power of the court on review is to determine whether the order is lawful and reasonable and if the court determines the order is unlawful or unreasonable then the court has the power to vacate, modify or set aside the order. Then under 66-118k the judgment of the court is filed with the KCC and the motor carriers must seek further relief through the administrative process before the KCC. The district court was not authorized to find the order void and then proceed to implement the 18% increase. In State, ex rel., v. Flannelly, 96 Kan. 372, 152 Pac. 22 (1915), this court said:
"The courts have repeatedly declared that the courts can not fix rates, and that fixing rates is a legislative function. When rates are fixed, the courts can ascertain whether or not they are in violation of law or of some constitutional provision. But courts have not the authority to determine what rates will be reasonable, just, compensatory, or legal, and then put in effect those rates. The commission can not finally determine what rates will be legal and will not violate constitutional provisions. The commission is the body authorized by law to say in the first instance what rates are legal and will not violate constitutional provisions, but the courts must finally say whether or not the rates fixed are illegal or do violate such provisions. The one function is legislative, while the other is judicial. The commission can not invade the field occupied by the court; neither can the court invade the field occupied by the commission. The commission must act first, and the courts afterward." p. 382.
More recently, the Court ruled in Southwestern Bell Tel. Co. v. State Corporation Commission, 192 Kan. 39, 386 P.2d 515 (1963), that:
"This court cannot fix a rate. Neither can it tell the Commission what rate would be most fair to both the Company and the consumers. This is the sole responsibility of the Commission." p. 87. *993 The finding of the district court that the motor carriers involved herein could proceed to charge the 18% increased rate without further proceedings before the KCC was error, as was the finding that the entire KCC order was void. As the court found the 3% maximum rate increase provisions reasonable and lawful, it should have modified and set aside the objectionable part of the order which allowed individual carriers to charge less than the maximum rate without filing such lower rates with the KCC. Other arguments made by the parties have been considered and found to be without merit.
The judgment is affirmed in part and reversed in part in conformance with the views expressed in this opinion.