(704 P.2d 989)

No. 58,201

MAPCO INTRASTATE PIPELINE COMPANY, INC., *Appellant,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS and its members, MICHAEL LENNEN, KEITH R. HENLEY, RICHARD C. (PETE) LOUX, and his successor in office, MARGALEE WRIGHT, members of the State Corporation Commission and their successors in office, if any, *Appellees.*

Opinion filed August 8, 1985.

*Curtis M. Irby,* of Kaufman, Bonwell, Foster & Irby, of Wichita, and *Kristen E. Cook,* general counsel, Mapco Intrastate Pipeline Company, Inc., of Tulsa, Oklahoma, for the appellant.

*John Jay Rosacker,* assistant general counsel, Kansas Corporation Commission, for the appellee.

Before FOTH, C.J., REES and PARKS, JJ.

FOTH, C.J.: Mapco Intrastate Pipeline Company, Inc. (Mapco), appeals an order of the Kansas State Corporation Commission (Commission or KCC), denying Mapco's requested increase in intrastate common carrier pipeline tariff rates. The Commission approved a tariff increase lower than that requested.

Mapco and Mid-America Pipeline Company (Mid-America) are wholly owned subsidiaries of Mapco Transportation, Inc.

They are common carrier pipeline companies transporting natural gas liquids and some refined petroleum products. According to its president, Mid-America has 7,000 miles of pipe extending from the Wyoming overthrust through the West Texas-Hobbs, New Mexico area then north through Kansas to Minnesota and Wisconsin. As an interstate carrier, Mid-America is regulated by the Oil Pipe Line Board of the Federal Energy Regulatory Commission (FERC).

Mapco is a corporation created by its parent to track intrastate movements and to meet tariff requirements for intrastate shipping. It leases pipeline capacity from Mid-America and has no physical assets or employees of its own. As an intrastate carrier, Mapco is regulated by the KCC.

On November 30, 1984, Mapco filed a proposed tariff for its Kansas customers which would result in an increase in revenues of about 7.8%, to be effective January 1, 1985. Notification to shippers occurred substantially simultaneously. At the Commission's request, on December 17, Mapco filed a "Justification Questionnaire" giving as its reasons for the increase inflation and rising operating costs.

On December 28, 1984, the KCC entered a suspension order, deferring the effective date of the proposed tariff for two hundred forty days. In its order, the Commission indicated "an investigation into the rate increase should take place, particularly on the effects of inflation and rising operating costs on the applicant." Mapco filed a motion for reconsideration requesting modification of the suspension order to allow tariffs to become effective subject to refund. Mapco requested a hearing on the suspension order in the event the Commission did not agree to modification. There appears in the record no order on Mapco's motion for reconsideration. In its brief, the Commission contends the motion was denied by operation of law because rehearing was not granted or continued within ten days. We agree. K.S.A. 66-118b.

The KCC held a hearing on January 24, 1985, on the merits of the tariff increase. Four Mapco officials testified; the Commission staff presented no evidence. On March 7, 1985, the Commission entered its order denying the 7.8% increase requested for Kansas intrastate operations, granting instead a 4% increase.

That was the same percentage increase being implemented on a system-wide basis for the Mid-America system.

Mapco's application for rehearing was denied, and it filed an Application for Judicial Review in this court.

## I. Jurisdiction.

We are met at the outset by a question of the jurisdiction of this court. K.S.A. 66-118a provides: "The court of appeals shall have exclusive jurisdiction of proceedings for review of an order or decision of the state corporation commission *arising from a rate hearing* requested by a public utility or requested by the state corporation commission when a *public utility* is a necessary party." Emphasis added. The district court reviews other KCC orders or decisions. K.S.A. 66-118a.

Resolution of the jurisdictional issue depends on characterization of this tariff proceeding as "arising from a rate hearing" and determination of Mapco's status as a "public utility."

Turning first to Mapco's status as a public utility, we note that it is undoubtedly a "common carrier" as defined in K.S.A. 66-105, and is generally regulated as such by the KCC. However, the jurisdictional statute, K.S.A. 66-118a, specifically provides that "[a]s used in this act, 'public utility' means a public utility as defined by K.S.A. 66-104 and amendments thereto."

K.S.A. 66-104, in turn, provides in relevant part:

"The term 'public utility,' as used in this act, shall be construed to mean every corporation . . . that now or hereafter may own, control, operate or manage, except for private use, any equipment, plant or generating machinery, or any part thereof, for the transmission of telephone messages or for the transmission of telegraph messages in or through any part of the state, *or the conveyance of oil and gas through pipelines in or through any part of the state,* except pipelines less than fifteen (15) miles in length and not operated in connection with or for the general commercial supply of gas or oil . . . ." Emphasis added.

Thus, Mapco meets the definition of "public utility" contained in K.S.A. 66-104. Since it does, it is also a "public utility" for the purpose of determining this court's jurisdiction under K.S.A. 66-118a. It does not matter that it is also a "common carrier" under K.S.A. 66-105. *Cf. Edwards County Comm'rs v. Simmons*, 159 Kan. 41, 51-52, 151 P.2d 960 (1944), where it was recognized, albeit in a different context, that the term "public utility corporation" in its broad and general sense includes a common carrier.

The second part of the jurisdictional test is whether this is a case "arising from a rate hearing." The general procedure for a change of rates for both common carriers and public utilities

subject to KCC supervision appears at K.S.A. 66-117. It provides for a filing with the Commission whenever a common carrier or public utility wishes to make effective "any changed rate, joint rate, toll, charge or classification or schedule of charges, or any rule or regulation or practice pertaining to the service or rates of such public utility or common carrier." The KCC may then allow the change or, on complaint or on its own motion, hold a hearing. This statute is the primary source of the Commission's authority to regulate rates of public utilities and common carriers under its jurisdiction. It goes on to require that proposed changes in rates be "plainly indicated" in the documents filed by "proper reference marks in amendments or supplements to existing tariffs, schedules or classifications."

Thus all changes in rates are initiated by the filing of documents which may include new tariffs, or by the filing of new tariffs alone. By KCC regulation some such filings must be supported by elaborate documentation, and these filings may develop into the familiar "rate hearing" in which the ultimate issue is the overall revenue entitlement of the public utility or common carrier. However, any such proceeding in which the proposed new tariff will result in a rate and revenue increase is, in a generic sense, a "rate hearing."

This court recently considered the meaning of the phrase "arising from a rate hearing." *In re Application of Southwestern Bell Tel. Co.,* 9 Kan. App. 2d 525, 529-31, 685 P.2d 304 (1984), *rev. denied* October 2, 1984. In that case, the Commission granted a general rate increase but set the tariff determination on a separate docket because of the need to resolve the rate case quickly. 9 Kan. App. 2d at 529-30. This court based appellate jurisdiction on two factors: "(1) the close relationship between this case and the prior rate case; and (2) the similarity of the involved tariff to a rate schedule." 9 Kan. App. 2d at 529.

The court's discussion of the second factor is relevant here:

"The similarity of this tariff to a rate schedule also weighs favorably for our assumption of jurisdiction. Tariffs have been defined as 'those terms and conditions which govern the relationship between the utility and its customers.' *Southwestern Bell Tel. Co. v. Kansas Corporation Commission,* 233 Kan. 375, 377, 664 P.2d 798 (1983). A rate schedule involves 'pricing the product to particular classes of customers to permit the utility to recover the revenue to which it is entitled.' *Midwest Gas Users Ass'n v. Kansas Corporation Commission,* 5 Kan. App. 2d 653, Syl. ¶ 1, 623 P.2d 924, *rev. denied* 229 Kan. 670 (1981). A

tariff is thus broader than a rate schedule and can include terms beyond the mere pricing of the product. See, *e.g., Burdick v. Southwestern Bell Tel. Co.*, 9 Kan. App. 2d 182, 675 P.2d 922 (1984) (tariff provisions regulating interruption of telephone service).

"The tariff in issue is quite similar to a rate schedule, however, for it sets forth how the $5.6 million will be assessed against various classes of SWB [Southwestern Bell] customers so that SWB can recover the revenue to which it is entitled. Thus, approval of the tariff by the KCC is analogous to approval of a rate schedule. Cases involving only the validity of a rate schedule, and not the validity of the underlying rate increase, have been appealed directly to this court under K.S.A. 66-118a. *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 5 Kan. App. 2d 653; *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979).

"The conclusion that this court has jurisdiction in this case does not mean that all cases involving tariffs are directly appealable to this court under K.S.A. 66-118a. For example, questions of tariff interpretation should be appealed to the district court. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375. If the tariff is closely related to a prior rate case or if it is similar to a rate schedule, jurisdiction will more likely be with this court than with the district court." 9 Kan. App. 2d at 530-31.

While a tariff may deal with nonrate matters such as billing procedures or service cutoffs, in this case the amended tariff filed by Mapco dealt only with new rates designed to produce higher revenues. The Commission's hearing on the tariff likewise dealt only with rates and revenues. We conclude that it was a "rate hearing" as that term is used in K.S.A. 66-118a. The resulting order was therefore one "arising from a rate hearing." Mapco is a "public utility" which was a necessary party. We therefore have exclusive jurisdiction under K.S.A. 66-118a.

## II. The Suspension Order.

Mapco argues at length that the Commission's order suspending the effective date of the proposed new tariff was improper because it gave inadequate reasons for the suspension and gave no reason why the suspension was for 240 days rather than for some lesser time.

In suspending the tariffs for the maximum 240-day period, the Commission stated: "The Commission has determined that an investigation into the rate increase should take place, particularly on the effects of inflation and rising operating costs on the applicant." This statement of reason is brief but more specific than the reason found to be inadequate in *Conn. Light & Power Co. v. Federal Energy Reg. Com'n*, 627 F.2d 467 (D.C. Cir. 1980), to which Mapco refers this court.

" 'Our review of the filing and the pleadings indicates that the proposed rates have not been shown to be just and reasonable and may be unjust, unreasonable, unduly discriminatory, preferential or otherwise unlawful.' " 627 F.2d at 468.

To us the clear implication of the Commission's order here was that an investigation of Mapco's stated reasons for the increase was necessary to determine whether they had a factual basis. If not the resulting rates might well be "unjust, unreasonable, unduly discriminatory, preferential or otherwise unlawful." Despite its protestations, Mapco should have been well aware of the purpose of the proposed hearing.

Other reasons Mapco advances in attacking the suspension order are not well grounded. Mapco contends there was no reason to suspend because there had been no shipper protests. The nature of the notice sent to shippers did not encourage protest. Although shippers were told protests could be filed, the letter instructed them to substitute tariff schedules, implying Commission approval. Both the Hearing Examiner and the Commission, in its order, commented on the impropriety of the notice sent. Rate increases are not effective until tariffs are filed and approved by the Commission. See, e.g., *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. 604, 612, 538 P.2d 702 (1975); *Sunflower Pipeline Co. v. Kansas Corporation Commission*, 3 Kan. App. 2d 683, 686, 600 P.2d 794 (1979).

Mapco also contends the suspension was improper because Commission staff had recommended approval of the tariffs. The Commission has discretion to accept or reject testimony and, by implication, recommendations of its staff. *Union Gas System, Inc. v. Kansas Corporation Commission*, 8 Kan. App. 2d 583, 586-87, 663 P.2d 304, *rev. denied* 233 Kan. 1093 (1983).

Mapco also contends there was no reason for its tariffs to be suspended when tariffs were approved for another pipeline company "requesting the same tariff increase for basically the same reasons." This court does not have before it the record in the other tariff application. Comparison of the carrier justification questionnaires attached to appellant's brief indicates Mapco sought a $580,000 increase, whereas Continental Pipe Line Co. was seeking only a $65,900 increase. Without more evidence we cannot conclude that the Commission's decision to devote its

limited resources to the filing with the larger financial impact was unreasonable.

Finally, we observe that 240 days is the maximum suspension time authorized by K.S.A. 66-117(b). The Commission's order took full advantage of the time allowed to it by the legislature to hear and determine Mapco's application. In fact, the hearing on the merits was held on January 24, 1985, and the final order entered March 7, 1985, just 66 days after the suspension order became effective. The original order was clearly precautionary, designed to allow for unforeseen contingencies which might delay determination of the matter. We cannot fault the Commission for its caution; the actual handling of the matter strikes us as admirably expeditious.

In any event, any decision we might make on the suspension order would have no effect on Mapco's revenues at this time; retroactive increases in rates are not possible. See *Six Cities v. State Corporation Commission*, 213 Kan. 413, 516 P.2d 596 (1973).

Further, even if there were irregularities in the suspension order we could not find them so serious as to render all subsequent proceedings void — and it is only by such a finding that Mapco could benefit from a successful attack on the suspension order.

### III. THE COMMISSION'S MARCH 7, 1985, ORDER

The appellate scope of review of orders or decisions of the KCC is limited to a determination whether such orders or decisions are lawful and reasonable. K.S.A. 66-118d. See, *e.g.*, *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 376, 664 P.2d 798 (1983); *Kansas Gas & Electric Co. v. State Corporation Commission*, 218 Kan. 670, Syl. ¶ 1, 544 P.2d 1396 (1976). An explanation of this standard of review appears in *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979), cited with approval in *Kansas Electric Power Coop., Inc. v. Kansas Corporation Comm'n*, 235 Kan. 661, 664, 683 P.2d 1235 (1984); *In re Application of Southwestern Bell Tel. Co.*, 9 Kan. App. 2d at 531-32; *Union Gas System, Inc. v. Kansas Corporation Commission*, 8 Kan. App. 2d at 586; *Ash Grove Cement Co. v. Kansas Corporation Commission*, 8 Kan. App. 2d 128, 130, 650 P.2d 747 (1982).

"A court has no power to set aside such an order unless it finds that the

commission acted unlawfully or unreasonably. *Jones v. Kansas Gas and Electric Co.*, 222 Kan. 390, 396-97, 565 P.2d 597 (1977). An order is 'lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. *Central Kansas Power Co. v. State Corporation Commission*, 221 Kan. 505, Syl. ¶ 1, 561 P.2d 779 (1977). An order is generally considered 'reasonable' if it is based on substantial competent evidence. *Jones v. Kansas Gas and Electric Co.*, 222 Kan. 390, Syl. ¶ 2.

"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. *Central Kansas Power Co. v. State Corporation Commission*, 221 Kan. at 511. Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. *Central Kansas Power Co. v. State Corporation Commission*, 206 Kan. 670, 675, 482 P.2d 1 (1971). The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, 48-49, 386 P.2d 515 (1963). Hence a court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it. *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. 604, 617, 538 P.2d 702 (1975); *Graves Truck Line, Inc. v. State Corporation Commission*, 215 Kan. 565, Syl. ¶ 5, 527 P.2d 1065 (1974)." 3 Kan. App. 2d at 380-81.

Mapco first contends the Commission's order is unreasonable, claiming that there is not substantial competent evidence to support the decision allowing a 4% increase rather than a 7.8% increase.

The Commission, in its March 7, 1985, order, focused on the lack of interstate/intrastate distinction in Mapco's supporting documentation. The Commission observed that Mapco's calculation of fixed operating costs per barrel was based on a system-wide analysis. This court has recognized the KCC's authority to require separation of interstate and intrastate operations " 'to avoid jurisdictional conflicts between state and federal regulatory agencies and to avoid discriminatory rates which result in one class of ratepayers subsidizing another.' " *Elkhart Tel. Co. v. Kansas Corporation Commission*, 7 Kan. App. 2d 235, 235-36, 640 P.2d 335 (1982). Mapco had been established as a separate entity for intrastate operations, but testimony of Fred Isaacs and Robert Cronk clearly revealed there had been no separate cost allocations.

The Commission found that interstate cost calculations had not been scrutinized by any regulatory agency and there existed no intrastate cost justification. The Commission apparently found documentation regarding interstate costs unreliable and rejected testimony that intrastate costs exceeded those calculated for the system as a whole. The Commission has discretion to weigh and accept or reject testimony. *Union Gas System, Inc. v. Kansas Corporation Commission*, 8 Kan. App. 2d at 586-87.

Mapco contends, in particular, that the Commission was not justified in settling on a 4% increase. K.S.A. 66-110 gives the Commission authority to investigate rates and, upon a finding that rates are unjust, unreasonable, unjustly discriminatory or unduly preferential, substitute a just and reasonable rate. See *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. at 612. Rather than wholly rejecting Mapco's application, the Commission determined the company should be allowed to increase its rates by the FERC approved 4% system-wide increase.

The Commission's action is supported by substantial competent evidence and, therefore, is found reasonable.

Mapco also attacks the Commission's order as unlawful for failure to present adequate findings. K.A.R. 82-1-232(a)(3) provides: "The order shall contain a concise and specific statement of the relevant law and basic facts which persuade the commission in arriving at its decision."

"[R]ules and regulations adopted by an administrative agency to carry out legislative policy have the force and effect of law. Further, the commission is required to conform to its rules, and failure to comply renders an order unlawful." *Clairborne v. Coffeyville Memorial Hospital*, 212 Kan. 315, 317, 510 P.2d 1200 (1973).

In *Ash Grove Cement Co. v. Kansas Corporation Commission*, 8 Kan. App. 2d at 132, this court discussed the purpose and sufficiency of findings:

"The purpose of findings of fact as mandated by K.A.R. 82-1-232(a)(3) is to facilitate judicial review and to avoid unwarranted judicial intrusion into administrative functions. The Commission must, therefore, express the basic facts upon which it relied with sufficient specificity to convey to the parties, and to the courts, an adequate statement of facts which persuaded the Commission to arrive at its decision."

While cautioning that this court does not encourage a minimal

finding standard, the court stated an established principle of law that "findings do not have to be stated with such particularity as to amount to a summation of all the evidence." 8 Kan. App. 2d at 133.

The Commission based its decision on the inadequacy of evidence supporting the proposed intrastate rate increase. The explanation, while not extensive, is adequate to advise the parties and this court of the basis for the decision, *i.e.*, that Mapco did not sufficiently document the costs of its intrastate operation. Being adequate for that purpose, it is deemed "lawful."

Because the order is both reasonable and lawful, it is affirmed.